## NOTE.

Soon after the preceding case was adjudged, there came up and was adjudged another involving the same point of jurisdiction. It was the case of

## THE ASSESSORS v. OSBORNES.

In which the first two points adjudged in the preceding case, and the points adjudged in *Insurance Company* v. *Ritchie* (5 Wallace, 541), are affirmed; including the point adjudged in this last case, to wit, that where jurisdiction depends wholly on a statute, suits brought during the existence of the statute fall with its repeal.

IN this case, which came on error from the Circuit Court for the Northern District of New York, the same condition of enactment and repeal of statutes presented itself as in the last case. It is set forth, *supra*, pp. 560–562. It makes the fundamental part of this case as of that. And the reader who desires to read the report of this case as well as the report of that, will please to recall it thence, or refer to it there.

----

In the present case, D. & J. Osborne, manufacturers, brought
suit to June Term, 1866, against one Gates, assessor of internal
revenue, to recover damages for his having illegally assessed
against them taxes upon certain articles manufactured by them.
A case was stated for the judgment of the court. In one clause
of it, it was agreed that "the plaintiffs, for several years past,
have been manufacturers of reaping and mowing machines at
the city of Auburn, and within the 24th collection district of the
State of New York;" and in another clause, that "the defendant,
as the assessor of the 24th district, did require of the plaintiffs
that they should return, &c., the number of tons," &c.

In the declaration a similar representation was made as to the
citizenship of the parties. It alleged that the plaintiffs bring
"their certain declaration against Joseph Gates, the assessor of
internal revenue for the 24th district of the State of New York,
which is in and within the said Northern District of New York;"
and it thus began: "And whereas the said D. M. Osborn & Com-
pany, so being the exclusive manufacturers, &c., at their said
manufacturing establishment in the said city of Auburn, and
within the said 24th collection district of the said State."

The court gave judgment for the plaintiffs, and the govern-
ment brought the case here on error.

*Mr. Hoar, Attorney-General, and Mr. Field, Assistant Attorney-
General, for the assessor.*

The cases of the *Insurance Company* v. *Ritchie,* and of *Horn-
thall* v. *The Collector,** conclude this case, irrespective of merits.
Any discussion of these is, therefore, irrelative. The parties
were obviously all resident within and all probably citizens of
the State of New York, and it was perfectly settled by the first
of the cases cited, as it is also affirmed by the second, that in
the present state of the statutory law, a Circuit Court of the
United States has no jurisdiction of a suit originally brought
there for an alleged illegal assessment of internal revenue taxes
collected or paid, unless the citizenship of the parties be such as
to give it jurisdiction, and unless, also, this citizenship be averred.

*Mr. D. Wright, contra,* submitted,

1st. That it did not appear that the case had not been brought

---

* 5 Wallace, 541; and *supra,* 560.

originally in a State court and removed into the Circuit Court, as required by the statute of July 13th, 1866, to give the Circuit Court jurisdiction under existing laws.

2d. That it did not appear that the plaintiff and defendant were not citizens of different States, as required to confer jurisdiction upon the Circuit Court.

3d. That if the case was properly cognizable in the Circuit Court at the time it was commenced, the subsequent repeal of the provision conferring such jurisdiction would not impair the right of the plaintiffs to maintain the suit.

Mr. Justice CLIFFORD stated the particulars of the case, and delivered the opinion of the court.

Damages are sought to be recovered by the plaintiffs of the defendant, as the assessor of internal revenue taxes for the twenty-fourth district in the State of New York, because, as they allege, he illegally assessed against them certain internal revenue taxes upon certain articles which they manufactured during the period specified in the declaration.

They brought their suit on the twentieth of July, 1866, and the declaration contains forty-one counts. Twenty-eight of the counts relate to certain internal revenue taxes alleged to have been illegally assessed by the defendant against the plaintiffs upon certain iron castings of two classes therein described. One class consisted of castings of iron exceeding ten pounds in weight for each casting, and the other class consisted of castings of iron of ten pounds weight for each casting, or less, as more fully set forth in the first fourteen counts.

Machines, in a finished condition, for reaping and mowing, were also manufactured by the plaintiffs during the same period, and the remaining thirteen counts relate to assessments made by the defendant against the plaintiffs upon reaping and mowing machines which were in a finished condition; and the charge is, that the last-named assessments were also illegal, and that the defendant, as such assessor, transmitted the lists to the collector of the district, and that the plaintiffs paid the taxes under protest, as in the case of the assessments upon the castings of iron, which were in fact used as component parts of the finished machines.

For several years prior to the assessment of the taxes in question the plaintiffs had been manufacturers of the Kirby Har-

vester and Mower, at Auburn, within that collection district. They were the exclusive licensees for the manufacture and sale of those machines under the several patents granted for that invention, and the agreed statement shows that they make the castings used as parts of the machines as well as the machines in their organized and finished condition, and it is admitted that the castings which they make cannot be used for any other purpose than as component parts of their machine, nor as parts of any different machine made by any other manufacturers.

Castings manufactured by the plaintiffs are made from pig-iron, upon which the internal revenue duties imposed under the acts of Congress have been fully paid. All of the castings, after being taken from the moulds, require to be polished, examined, and tested, to see if they are perfect and fit for the purpose before they can be used as component parts of a reaper or mower, and many of them have also to be painted and varnished.

Reapers and mowers, when sold by the plaintiffs, include as parts thereof all the necessary pieces of castings and of wood-work to constitute a complete working machine; but they do not put all of the several parts together until the purchaser is ready to use the machine in the field, as it is much more convenient to transport the several parts in their separate condition than the embodied machine.

Prior to the year 1865 the plaintiffs had never made any returns to the assessor or assistant assessor of any castings which they manufactured, nor had they ever been required to make any such return, either by the assessor, assistant assessor, or commissioner; but the commissioner, in March of that year, directed the defendant, as such assessor, to require of the plaintiffs such a return, specifying the number of tons of such castings which they had manufactured, of the two classes mentioned in the declaration, for the six months next preceding the month of March of that year, and also the number of finished machines which they had manufactured and sold during the same time, in order that the same might be separately taxed, as follows : (1.) That the castings of ten pounds weight or less each casting might be taxed at the rate of five per cent. *ad valorem.* (2.) That the castings exceeding ten pounds in weight each casting might be taxed at the rate of three dollars per ton. (3.) That the finished machines sold during that time might be taxed five

per cent. *ad valorem*, without any deduction being made for the castings used as component parts of the machines.

Pursuant to the directions of the commissioner the plaintiffs made the required return, and paid the taxes to the collector, under protest, and brought this suit to recover compensation for the illegal acts of the defendant. Process having been served, the defendant appeared and pleaded that he was not guilty, which was duly joined by the plaintiffs, and the parties entered into stipulation waiving a jury, and consenting that the cause might be tried by the court without the intervention of a jury.*

Hearing was accordingly had before the court and judgment was rendered for the plaintiffs in the sum of nine thousand eight hundred and five dollars and twelve cents, besides costs and charges. Whereupon the defendant sued out a writ of error and removed the cause into this court.

Besides the first assessment, which included the month of July, 1864, and extended to February, 1865, both inclusive, there were subsequent assessments for each month following, up to and including May, 1866, and the agreed statement finds that the same state of facts apply to every month thereafter until the passage of the act of the thirteenth of July, 1866, which transferred reapers and mowers to the free list.†

Where internal revenue taxes are illegally assessed it is well settled that the injured party, if he complies with the conditions specified in the act of Congress upon that subject, and pays the taxes under protest, may maintain an action of assumpsit against the collector to recover back the amount so paid.‡

Collectors in such cases are not required to reimburse themselves for such liabilities, but the provision is, that all such judgments against them shall be paid by the commissioner, including the costs and expenses of the suit. Such a judgment against the collector is in the nature of a recovery against the United States, and consequently the amount recovered is regarded as a proper charge against the revenue collected from that source. Grant all that and still the concession does not touch the question involved in this case, as the suit in the case before the court is against the assessor to recover back taxes paid to the collector, which presents a question never adjudi-

---

* 13 Stat. at Large, 5.          † 14 Stat. at Large, 149.
‡ Philadelphia *v.* The Collector, 5 Wallace, 731.

cated in this court.  Assessors may, perhaps, be liable for an illegal assessment in cases where they have no jurisdiction to make any assessment, but the question whether an assessor is liable to an action of assumpsit for taxes paid to a collector is a very different question, and it is quite certain that such a theory finds no support in any prior decision of this court.*

Actions of the kind may, under some circumstances, undoubtedly be maintained against the collector, and it may be that an assessor, acting in a case where he has no jurisdiction, may be liable to the injured party for an illegal assessment of internal revenue taxes, but neither the collector nor the assessor can be sued in the Circuit Court of the United States by any party who is a citizen of the same State with such collector or assessor.  Suits in such cases, that is, where the plaintiff and defendant are citizens of the same State, may be brought in the State courts, but such suits cannot be maintained in the Circuit Courts under existing laws unless the plaintiff and defendant are citizens of different States.  Consequently, where the parties are citizens of the same State, the action must be brought in the State court, but the defendant, if he sees fit and seasonably takes the proper steps, may remove the cause into the Circuit Court for trial.

Cases arising under the revenue laws were declared to be cognizable in the Circuit Courts by the act of the second of March, 1833, unless where it appeared that other provisions for the trial of the same had been previously made by law.  Laws for the assessment and collection of internal revenue duties were not in existence at that time, but those provisions were extended by the fiftieth section of the act of the thirtieth of June, 1864, to cases arising under the acts of Congress providing for the collection of internal revenue duties, and the same section provides that all persons authorized to assess, receive, or collect such duties or taxes under those laws shall be entitled to all exemptions, immunities, benefits, rights, and privileges therein enumerated or conferred.†

---

* Barhyte v. Shepherd et al., 35 New York, 238; Weaver v. Devendorf, 3 Denio, 117; Swift v. Poughkeepsie, 37 New York, 511; Dickinson v. Billings, 4 Gray, 42; Railroad v. Charlestown, 8 Allen, 245.

† 13 Stat. at Large, 241.

Such an action, to recover back internal revenue duties, illegally assessed, and paid under protest, might undoubtedly have been maintained in the Circuit Courts while that provision remained in force, although both parties were citizens of the same State, as the jurisdiction was made to depend upon the subject-matter, but the first proviso in the sixty-seventh section of the act of the thirtieth of July, 1866, expressly enacts that the original act, to wit, the act of the second of March, 1833, shall not be so construed as to apply to cases "arising under any of the internal revenue acts, nor to any case in which the validity or interpretation of those acts shall be in issue."*

Unquestionably the effect of that proviso was to confine the original act to the purposes for which it was passed, and to limit its scope and operation, standing alone and unaffected by the fiftieth section of the subsequent act, to cases arising under the acts of Congress providing for the collection of import duties. But that proviso left the fiftieth section of the act of the thirtieth of June, 1864, untouched and in full force, and if legislation had stopped there, persons duly authorized to assess, receive, or collect internal revenue duties would still have been entitled to the same exemptions, immunities, benefits, rights, and privileges under the original act as persons employed to assess, receive, or collect import duties.  Legislation, however, did not stop there, but the sixty-eighth section of the act of the thirteenth of July, 1866, repealed the fiftieth section of the act of the thirtieth of June, 1864, altogether, subject to the proviso contained in the same repealing section, which enacts that any case removed, from a State court, into the Circuit Court, under the former regulations upon the subject, shall be remanded, unless the justice of the Circuit Court shall be of the opinion that the same, if pending in the State court, might be removed into the Circuit Court under the new provision contained in the sixty-seventh section of that act.

Since the passage of that act and the repeal of the fiftieth section of the prior act, the Circuit Courts have no jurisdiction of cases arising under the internal revenue laws to recover back duties illegally assessed and paid under protest, unless the plaintiff and defendant therein are citizens of different States.   Such

---

* 14 Stat. at Large, 172; Philadelphia v. The Collector, 5 Wallace, 728; Insurance Company v. Ritchie, Ib. 541.

actions must be commenced in the State courts if the parties are citizens of the same State, but the defendant may, at any time before the trial, upon petition to the Circuit Court of the district in which he is served with process, remove the cause, upon due proceedings therein, into such Circuit Court, and the provision is that the cause thereafter shall be heard and determined as a cause originally commenced in that court.*

Assumpsit for money had and received is the appropriate remedy to recover back moneys paid under protest for internal revenue duties illegally assessed; and, if commenced in a State court, the action may be removed, on petition of the defendant, into the Circuit Court for the district where the service was made, and in that state of the case the jurisdiction of the Circuit Court is clear beyond doubt, irrespective of the citizenship of the parties, but if the action is originally commenced in the Circuit Court the cause must be dismissed for the want of jurisdiction, unless it appears that the parties were citizens of different States.

Three propositions are submitted by the plaintiffs as being severally sufficient to take the case before the court out of the operation of that rule: (1.) They contend that it does not appear that the case was not removed from the State court into the Circuit Court, as required to give the Circuit Court jurisdiction under existing laws. (2.) That it does not appear that the plaintiff and defendant in the case are not citizens of different States, as required to confer jurisdiction upon the Circuit Court. (3.) That the case was properly cognizable in the Circuit Court at the time it was commenced, and that the subsequent repeal of the provision conferring such jurisdiction does not impair the right of the plaintiffs to maintain the suit.

Unsupported in fact as the first proposition is, it does not seem to be necessary to enter into any argument to refute it. Suffice it to say, that the record shows that the suit was commenced in the Circuit Court, and that it was not removed into that court from the State court, which is all that need be said in reply to the first proposition.

When the jurisdiction of the Circuit Court depends upon the citizenship of the parties it is not enough that it does appear that they are not citizens of the same State, but the facts neces-

---

* 14 Stat. at Large, 171, § 67.

sary to give the Circuit Court jurisdiction must be distinctly alleged. Circuit Courts are courts of special jurisdiction, and therefore they cannot take jurisdiction of any case, either civil or criminal, where they are not authorized to do so by an act of Congress.*

Jurisdiction in such cases was conferred by an act of Congress, and when that act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the act of Congress.†

Applying these principles to the present case it is clear that the Circuit Court had no jurisdiction of this case. Usually where a court has no jurisdiction of the case the correct practice is to dismiss the suit, but a different rule necessarily prevails in an appellate court in cases where the subordinate court was without jurisdiction and has improperly given judgment for the plaintiff. In such a case the judgment in the court below must be reversed, else the plaintiff would have the benefit of a judgment rendered by a court which had no authority to hear and determine the matter in controversy.

JUDGMENT REVERSED, and the cause remanded with directions to dismiss the case

FOR THE WANT OF JURISDICTION.

---

* Sheldon v. Sill, 8 Howard, 449; Turner v. The Bank, 4 Dallas, 10; McIntire v. Wood, 7 Cranch, 506; Kendall v. United States, 12 Peters, 616.

† Norris v. Crocker, 13 Howard, 438; Yeaton v. United States, 5 Cranch, 281; The Rachel, 6 Id. 329; The Irresistible, 7 Wheaton, 551; Maryland v. Railroad Company, 3 Howard, 534; 1 Kent (11th ed.), 465; Butler v. Palmer, 1 Hill, 324.