### SHERIDAN FLOURING MILLS, Inc., v. CASSIDY, Collector of Internal Revenue.

No. 2498.

District Court, D. Wyoming.
Jan. 11, 1937.

E. E. Lonabaugh and A. W. Lonabaugh, both of Sheridan, Wyo., and George T. Evans, of Denver, Colo., for plaintiff.

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo., Robert H. Jackson, Asst. Atty. Gen., and Andrew D. Sharpe and James E. Murphy, Sp. Assts. to the Atty. Gen., for defendant.

KENNEDY, District Judge.

Through an amended petition the plaintiff seeks to recover approximately $190,-000 paid as processing taxes under the Agricultural Adjustment Act of 1933, as amended (7 U.S.C.A. § 601 et seq.) covering the years 1933 to 1935, based upon a rejected claim for refund of the amount sued for and alleging the unconstitutionality of the act of 1935 prescribing the conditions for refunding of such claims.

To such amended petition the defendant interposes a demurrer based upon the Revenue Act of June 22, 1936 (49 Stat. 1648), asserting the absence of jurisdiction of this court to entertain the suit and the failure of the petition to state facts sufficient to constitute a cause of action.

The matter was heard upon the demurrer and submitted with oral arguments and exhaustive trial briefs by counsel. In view of the important points presented and the comparatively large number of cases of a similar nature confronting the federal District Courts, it would appear that a prompt decision might be expedient.

In this case it should be noted that the amended petition was filed after the Agricultural Adjustment Act had been adjudged unconstitutional by the Supreme Court (U. S. v. Butler, 297 U.S. 1, 56 S. Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914), and after the sums impounded in the registries of the District Courts pending that decision had been ordered returned to the respective taxpayers (Rickert-Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513), but before the Revenue Act of 1936 (49 Stat. 1648) was enacted. The point suggested by the demurrer is therefore in short as to whether, when applied to the relief sought by plaintiff, that act is violative of plaintiff's constitutional rights in the premises.

By title 7, section 901 to 913, of the Revenue Act of 1936 (7 U.S.C.A. §§ 623 note, 644–655), the Congress has purported to adopt legislation prescribing the manner in which amounts paid as processing taxes under the invalidated Agricultural Adjustment Act may be refunded. Briefly, but in substance, the pertinent features here of the 1936 act repeal the former provisions relating to the refunding of such taxes and provide: That no refunds shall be made unless it be affirmatively shown by the claimant that he has not shifted the burden of the tax directly or indirectly under conditions specifically required; that the claim for refund shall be filed before July 1, 1937, together with evidence supporting said claim under oath; that no suit, whether brought before or after the date of the enactment, shall be maintained in any court for such refund; that a board of nine members to be designated by the Secretary of the Treasury shall be set up to review the allowance or disallowance by the Commissioner of claims for refund; that there shall be a specified procedure before said board and for a review of its decisions in the Circuit Courts of Appeals upon questions of law, to be followed, if necessary, by certiorari to the Supreme Court; that there shall be certain standards to be followed in computing the tax to be refunded; and that no collector of internal revenue shall be liable for any act done by him in the assessment or collection of taxes under the Agricultural Adjustment Act in the performance of his official duties or if acting under the direction of his superior officer.

It is obvious from the reading of the act that it was the purpose and intent of

Congress to take from the federal courts of first instance the matter of determining permissible refunds in connection with processing taxes under the invalidated act and to confer such jurisdiction upon the Commissioner and a reviewing board, preserving the right of review to Courts of Appeals. In this the plaintiff contends that the act offends against the Fifth Amendment in depriving plaintiff of due process and violating its vested rights.

The federal District Courts are courts of limited jurisdiction, confined to those matters and subjects which are committed to them by legislative enactment. It is pertinent to inquire as to whether or not jurisdiction so conferred may be subsequently withdrawn as to accrued or unadjudicated rights. Drawing upon a few of the numerous cases cited by counsel, we refer to expressions of the Supreme Court touching upon the subject. In Kline v. Burke Construction Co., 260 U.S. 226, at page 234, 43 S.Ct. 79, 83, 67 L.Ed. 226, 24 A.L.R. 1077, the court, speaking through Mr. Justice Sutherland, says: "The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. The Mayor of Nashville v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851. And the jurisdiction having been conferred may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall. The Assessors v. Osborne, 9 Wall. 567, 575, 19 L.Ed. 748. A right which thus comes into existence only by virtue of an act of Congress, and which may be withdrawn by an act of Congress after its exercise has begun, cannot well be described as a constitutional right."

In an earlier case concerning internal revenue taxes in The Assessors v. Osbornes, 9 Wall. 567, at page 575, 19 L.Ed. 748, the court expresses itself as follows: "Jurisdiction in such cases was conferred by an Act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing Act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the Act of Congress."

Again, in Baltimore & P. Railroad Co. v. Grant, 98 U.S. 398, at page 401, 25 L. Ed. 231, it is said: "It is equally well set-tled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall with the law. United States v. Boisdore's Heirs, 8 How. 113 [12 L.Ed. 1009]; McNulty v. Batty, 10 How. 72 [13 L.Ed. 333]; Norris v. Crocker, 13 How. 429 [14 L.Ed. 210]; [Merchants'] Insurance Company v. Ritchie, 5 Wall. 541 [18 L.Ed. 540]; Ex parte McCardle, 7 Wall. [506] 514 [19 L. Ed. 264]; The Assessors v. Osborne, 9 Wall. 567 [19 L.Ed. 748]; United States v. Tynen, 11 Wall. 88 [20 L.Ed. 153]."

From these decisions it would become apparent that it is within the inherent power of Congress to withdraw jurisdiction which has once been conferred and that, when this is done as in the 1936 Revenue Act, the cases which were theretofore pending or rights which had theretofore accrued must fall with the law.

If the language in the early case of The Collector v. Hubbard, 12 Wall. 1, as found on page 14, 20 L.Ed. 272, in speaking of Revenue Acts, be taken for face value, the theory of the violation of vested rights asserted by plaintiff may not be sustained: "Remedies of the kind, given by Congress, may be changed or modified, or they may be withdrawn altogether at the pleasure of the law-maker, as the taxpayer cannot have any vested right in the remedy granted by Congress for the correction of an error in taxation."

Whatever the court may have previously said in regard to the unconstitutionality of acts which attempt to bar the rights of private litigants, it would seem that the high court has taken a different view with respect to those rights which arise between the government and its subjects, as indicated by the opinion of Mr. Chief Justice Hughes in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, with reference to conferring jurisdiction of various government relationships on tribunals or agencies other than the courts. The court says, 285 U.S. 22, at page 50, 52 S.Ct. 285, 292, 76 L.Ed. 598:

"As to determinations of fact, the distinction is at once apparent between cases of private right and those which arise between the government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments. The Court referred to this distinction in Den ex dem. Murray's Lessee v. Hoboken Land and Improvement Co. [18

How. 272, 15 L.Ed. 372], supra, pointing out that 'there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.' Thus the Congress, in exercising the powers confided to it, may establish 'legislative' courts (as distinguished from 'constitutional courts in which the judicial power conferred by the Constitution can be deposited') which are to form part of the government of territories or of the District of Columbia, or to serve as special tribunals 'to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it.' But 'the mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.' Ex parte Bakelite Corp., 279 U.S. 438, 451, 49 S.Ct. 411, 413, 73 L.Ed. 789. Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions, and payments to veterans."

A review of the various congressional enactments concerning the matter of levying and collecting federal revenues fairly justifies the conclusion that the manner in which these matters have been regulated in the past has varied from time to time, and such acts have always been construed as placing the power in the Congress to determine the manner in which the revenues of the government shall be handled, provided always that the taxpayer must not be defeated in his right to a fair and impartial hearing in accordance with the due process clause of the Constitution. The act of 1936 would seem to satisfy all of the requirements of notice and hearing before officials designated for the purpose in harmony with such due process.

It is asserted in plaintiff's behalf that the provisions of the act requiring a claimant to show that he has borne the burden of the tax which he seeks to have refunded is in itself violative of constitutional rights. The defendant in reply relies strongly in this particular upon the case of United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859, as signifying the legality and justice of the act in controversy. In that case, in construing an excise tax act requiring a taxpayer to make affirmative proof of not having shifted the tax to purchasers, Mr. Justice Van Devanter, speaking for the court (291 U.S. 386, at page 401, 54 S.Ct. 443, 448, 78 L.Ed. 859) says:

"The contention is made that subdivision (a) (2), when construed and applied as we hold it should be, infringes the due process clause of the Fifth Amendment to the Constitution in that it strikes down rights accrued theretofore and still subsisting, but not sued on prior to April 30, 1928. This contention is pertinent, because the cases now being considered were begun after April 30, 1928, and in each the tax in question was paid before section 424 was enacted, which was May 29, 1928.

"If the tax was erroneous and illegal, as is alleged, it must be conceded that, under the system then in force, there accrued to the taxpayer when he payed the tax a right to have it refunded without any showing as to whether he bore the burden of the tax or shifted it to the purchasers. And it must be conceded also that section 424 applies to rights accrued theretofore and still subsisting, but not sued on prior to April 30, 1928, and subjects them to the restriction that the taxpayer (a) must show that he alone has borne the burden of the tax, or (b), if he has shifted the burden to the purchasers, must give a bond promptly to use the refunded sum in reimbursing them. But it cannot be conceded that in imposing the restriction the section strikes down prior rights, or does more than to require that it be shown or made certain that the money when refunded will go to the one who has borne the burden of the illegal tax, and therefore is entitled in justice and good conscience to such relief. This plainly is but another way of providing that the money shall go to the one who has been the actual sufferer and therefore is the real party in interest.

"We do not perceive in the restriction any infringement of due process of law. If the taxpayer has borne the burden of the tax, he readily can show it; and certainly there is nothing arbitrary in requiring that he make such a showing. If he has shift-

ed the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest; and in such a situation there is nothing arbitrary in requiring, as a condition to refunding the tax to him, that he give a bond to use the refunded money in reimbursing them. Statutes made applicable to existing claims or causes of action and requiring that suits be brought by the real rather than the nominal party in interest have been uniformly sustained when challenged as infringing the contract and due process clauses of the Constitution."

While the plaintiff contends that this language is either obiter as to the point then before the court, or is inapplicable to the situation at bar, it is strongly suggestive of what might be the view of that court in connection with a construction of the act here being considered. Whether that portion of the act relating to the matter of proofs required in connection with the recovery of taxes paid be constitutional or not is a matter that might subsequently be determined in the tribunals which have been selected for the review of such claims, upon the theory that it is not so inseparably connected with the provisions of the act withdrawing jurisdictions from the lower courts as to cause the latter provision to fall with the former, if found to be unconstitutional.

It may in some respects seem strange and unconscionable that purported taxes collected by the government under a law which was later declared unconstitutional should be retained by the government under any circumstances, and yet this remains as a problem to agitate the minds and consciences of the legislative branch of the government rather than those of the judicial branch. As to the Congress which speaks for the sovereign, the scriptural text with reference to the Almighty is applicable: "The Lord gave and the Lord hath taken away."

As to the alleged inconsistency of moneys from processing taxes in the registries of the courts being ordered returned by the Supreme Court after the act under which they were collected was declared unconstitutional, while the moneys of the same character theretofore collected and paid into the government treasury might only be returned upon certain specified and almost insuperable conditions, a possible distinction is, that in the former case the moneys were in the custody of the courts and subject to their control, while in the latter they had passed under the control of the Treasury Department and become subject to the will of the legislative branch of the government.

From what has been said, the conclusion must be that this court is barred from assuming jurisdiction to adjudicate plaintiff's claim by virtue of the Act of June 22, 1936. It is therefore unnecessary to consider the insufficiency of plaintiff's petition in other respects. The demurrer will be sustained and plaintiff's petition dismissed, with costs. A decree may be entered accordingly, reserving to plaintiff all proper exceptions.