COCHRAN et al. v. ST. PAUL & TACOMA LUMBER CO.

CRAWFORD et al. v. WEYERHAEUSER TIMBER CO. (two cases).

SAME v. SAGINAW LOGGING CO.

Nos. 805, 881, 882, 885.

District Court, W. D. Washington, S. D.

May 26, 1947.

Houghton, Cluck & Coughlin, of Seattle, Wash., for plaintiffs Cochran and others.

Houghton, Cluck & Coughlin, of Seattle, Wash., for plaintiffs Crawford and others.

Grosscup, Ambler & Stephan, of Seattle, Wash., for defendant St. Paul & Tacoma Lumber Co.

W. E. Heidinger, of Tacoma, Wash., for defendant Weyerhaeuser Timber Co.

Hart, Spencer, McCulloch & Rockwood, of Portland, Or., for defendant Saginaw Logging Co.

LEAVY, District Judge.

We have here four cases that are consolidated for the purpose of considering the motions which are similar in all of them, and the consolidation of course was made with the thought that it would expedite disposition of the issues that have been raised by these motions. All of these cases are at issue. They have been on file in this court for almost a year. Their origin followed shortly after the Supreme Court pronouncement in the Anderson v. Mount Clemens Pottery, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515, interpreting the language of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., in reference to time immediately before and immediately after the regular eight hour period now known as "Portal to Portal" time.

The issue presented is a novel one. I say "novel" because, in the first instance, in all of our experience, legislative and judicial, we never have had legislation to deal with, similar to the Fair Labor Standards Act of 1938, and in dealing with it we have had,

of necessity, many of its features construed by the courts. As a result of judicial construction in this Mount Clemens Pottery case there are a large number of suits similar to the four that we have here today which have been instituted throughout the United States—I cannot even hazard a guess as to the number, but I imagine they run into the thousands.

It is not for this court to determine the wisdom or lack of wisdom in the acts of Congress in attempting to remedy the wrong that they felt existed, but they did attempt by the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., to remedy a situation that they recite in the preamble of the act is the result of a misconstruction of their intention when it enacted the original Fair Labor Standards Act of 1938. In order to remedy a situation that they in their wisdom thought required remedial legislation, they went much further—I think all parties will concede this—than they had ever gone in the enactment of legislation which dealt with a situation similar to the one we have here.

These four cases are cases involving a very large amount of money. If the compensation claimed were allowed, and then that doubled and costs and attorneys' fees, the sum would be substantially in excess of a million dollars.

There are involved here approximately three hundred employees. They are appearing in a number of these cases in a representative capacity. No precedent can be cited that tends to construe the act that Congress has just recently passed and is now identified as Public Law 49, because the effective date is of May 14, 1947. The decision of this Court might well be the first of its kind in the United States involving hundreds or thousands of other cases. By the very nature of the matter involved, its importance and its significance to labor and to industry, and to the general economy of the nation, I have no reason to believe that a determination made by this court today of the issue is going to be one that will be universally accepted throughout the United States. The question ought to be. disposed of at the earliest possible date. Feeling that way, still I do not mean to imply that I would feel warranted in holding that the motions of the various defendants were well taken unless I could be persuaded that there is sufficient merit in the position they take to justify such a holding.

To deny the motions would, if not directly at least by implication, require findings that the act—this Portal-to-Portal Act —is unconstitutional. I say that because its language is so plain, direct, simple and unequivocal that it leaves no room for construction or doubt as to what was intended or what was meant. We are placed in a position where we need not endeavor to determine what the Congress meant when it spoke, because, as I say, it leaves no room whatever for construction.

Part I of the Act consists of an exceptionally lenghty preamble setting forth the objectives sought to be attained and the purposes for the enactment of the legislation.

Part II, section 2, subsection (a), provides that no employer shall be subject to any liability under the Fair Labor Standards Act of 1938, as amended, "in any action or proceeding commenced *prior to or on* or after the date of the enactment of this act."

The instant cases were all commenced prior to the date of the enactment of this act. There is no room whatever for doubt as to what was meant by that language—no room to draw different inferences from it, and Congress apparently being fearful that the courts might do just that, saw fit to amplify it by some further language. I refer particularly to subsections (1) and (2) of subsection (a), of section 2, Part II of the Act. Then, in order to further make clear their intention, in subsection (d) of section 2 and Part II of the Act, they provide:

"No court of the United States, of any State, Territory, or possession of the United States, or of the District of Columbia, *shall have jurisdiction of any action or proceeding,* whether instituted *prior to or on* or after the date of the enactment of this act, to enforce liability"—and I am omitting the reference to punishment because we are not here concerned with the crimin-

al features of the act—"to enforce liability for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, * * * to the extent that such action or proceeding seeks to enforce any liability or impose any punishment with respect to an activity which was not compensable under subsections (a) and (b) of this section"— and subsection (a) and (b) of course put us back to the position where we were prior to the enactment of the Fair Labor Standards Act in 1938. And then to make doubly sure, again in subsection (e) there is a provision: that

"No cause of action based on unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, * * * which accrued prior to the date of the enactment of this act, or any interest in such cause of action, shall hereafter be assignable."

While that language does not directly go to the immediate issue we have before us, yet it does involve a construction placed upon the act by the courts in a number of decisions.

I must grant that this Congressional enactment is drastic. It is exceptional, it is extraordinary, and it is unusual. I have examined the briefs that were submitted by counsel—very able briefs on both sides, and have done considerable independent research work in addition. I have carefully tried to analyze the three outstanding cases cited by counsel for the plaintiffs, which are: Ettor v. City of Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L. Ed. 773, dealing with the subject of vested rights, wherein the Supreme Court of the United States reversed the supreme court of the State of Washington, concerning liability of the city for certain public improvements, and they had this to say, and I am only quoting a small part of that opinion:

"At the time the grading was done there was in force an act of the Washington legislature which required the city to make compensation for consequential damages due to an original street grading. Pending these suits, and while they were actually being heard, the provision of the act referred to which expressly required the city to provide for or make compensation for all such damage was amended so as to provide that the act should not apply to the original grading of any street."

There is a substantial degree of similarity in that respect to the matter that we have currently before us. The state Court directed a verdict for the city. The Supreme Court goes on to say:

"When the attention of the trial court was called to this repealing act, it directed a verdict for the city upon the theory that the right of action was statutory and fell with the statute, there being no saving clause."

That case does lend considerable support to the position taken by the plaintiffs in these cases, but the legislation there involved was quite different from the legislation that we have here. Here it is not a question of whether there was or was not, a saving clause, because the Portal-to-Portal bill is positive, direct, and unequivocal as to what its purpose is. It was not to save, but it was to obliterate or destroy any rights of the type that are asserted in these actions which we now have before us.

We take up another case cited and relied upon by the plaintiffs. It is the early case of Steamship Co. v. Joliffe, 2 Wall. 450, 69 U.S. 450, 17 L.Ed. 805, decided back in 1864. The facts of that case have already been discussed. I will not further mention them, other than the holding there was that an enactment by the State of California, after a right had arisen upon a contract, or a transaction in the nature of a contract authorized by statute, and has been so perfected that nothing else remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right, and stands independent of the statute. It isn't an entirely wild assertion to say that, in respect to the situation we have immediately presented to us, it is a situation similar to the one outlined by this rule of law as announced by the Supreme Court.

There is the third case, that of Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed.

866, that deals with a contractual liability. This case also arose in California and came up from the courts there to the United States Supreme Court, and the Supreme Court reversed the court of last resort in California and held that there was a contract; that the contract clause of the federal Constitution and the Fifth Amendment was involved and the right of enforcement of the liability was part of the creditors' contracts where the liability of the stockholder arose to creditors of a corporation, before the cause of action in the case cited was commenced. There had been a repeal and they held it involved both the Fourteenth and the Fifth Amendment.

When we go to the other side of this question we begin first with the statement that is not subject to dispute or contradiction; which is that a United States District Court is purely a creature of the legislative branch of the government, generally provided for by the Constitution, but not, in a stricter sense, a constitutional court. Congress undoubtedly has the power to abolish these courts entirely, give them another name, or dispense with the services that they render. Certainly, in the lifetime of some of us we know we have changed what was once the Circuit Courts and gave them a new name, outlined their duties, and made them the "District Courts"; provided for an appellate court, designated the Circuit Court of Appeals. Now there is some legislation pending to change the name again somewhat, if not, the powers. This Court is a creature of the Congress, and its jurisdiction, in reference to conferring and depriving it of jurisdiction comes from the Congress. Authority, by way of precedent, and much of it made very recently, in the last five years, under the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq. when the Office of Price Administration was established and maximum and minimum prices were fixed. In the act itself is to found language dealing with this subject. The District Courts and even the Circuit Courts were deprived of jurisdiction that theretofore had been conferred upon them. It was placed in a new court, called the Emergency Court of Appeals, and the act even went so far as to deny District Courts the right to pass upon any feature of constitutionality in either civil or criminal litigation involved in the O.P.A. law and regulations. There are scores of cases to the effect that legislation such as the Emergency Price Control Act is constitutional even though it does deprive the District and Circuit Courts of jurisdiction previously had. Among these numerous cases might be cited the very recent cases of Bowles v. Carothers, 5 Cir., 152 F.2d 603; Bowles v. Mannie & Co., 7 Cir., 155 F.2d 129; Superior Packing Co. v. Porter, 8 Cir., 156 F. 2d 193."

There is a substantial amount of authority to be found on what Congress can do and what it cannot do with reference to the courts and still be within constitutional limits.

I am going to cite, as I have already suggested to you, a case that made a strong appeal to me. That is the case of Assessors v. Osborne. It is found in 9 Wall. 567, 76 U.S. 567, 19 L.Ed. 748. This is an early case, 1869, and it seems to be a leading case, and has not been distinguished, modified, or over-ruled. The Court said, 9 Wall. on page 574, 76 U.S. on page 574, 19 L.Ed. 748:

"If the action is originally commenced in the Circuit Court"—which would be here the District Court—"the cause must be dismissed for want of jurisdiction, unless it appears that the parties were citizens of different States. * * * When the jurisdiction of the District Court depends upon citizenship of the parties it is not enough that it does not appear that they are not citizens of the same state, but the facts necessary to give the District Court jurisdiction must be distinctly alleged. District Courts are courts of *special jurisdiction,* and therefore they cannot take jurisdiction of any case, either civil or criminal, where they are not authorized to do so by an Act of Congress."

Expanding that language just a little to meet the situation we have here, where, by the Act of Congress, it is stated that this court and all courts are deprived of jurisdiction, not alone of what may occur in a certain line of litigation in the future, or what may be in existence at the moment of

enactment of the law, but of everything that has taken place by reason of an earlier enactment, then there is a striking parallel.

I grant that it is an unusual measure, but this court, must under the rule of construction which asserts that it is the duty of the courts, when constitutionality of a legislative enactment is brought into question, so to interpret the issue of constitutionality that it would result in upholding the same, rather than in finding against it.

Another case, which is an early case, is Collector v. Hubbard, 79 U.S. 1, 12 Wall. 1, 20 L.Ed. 272. This was an action for recovery back of money illegally exacted as Internal Revenue duties. The Supreme Court held that such actions cannot be commenced in the District Court. The question being: Did the Act of Congress of 1866 incapacitate Hubbard from bringing a second suit.

On page 14 of 79 U.S., on page 14 of 12 Wall., 20 L.Ed. 272, in that opinion, the Court says:

"Remedies of the kind, given by Congress, may be changed or modified, or they may be withdrawn altogether at the pleasure of the lawmaker, as the taxpayer cannot have any vested right in the remedy granted by Congress for the correction of an error."

It seems to me this is quite in point here. I know that, in passing upon the issues which I have before me, it is quite difficult to make a clear-cut distinction between rights and remedies. They have always been more or less confusing, I think, to the best of lawyers and judges, but until the Fair Labor Standards Act of 1938 was enacted by Congress, no rights whatever existed in any employee to maintain actions such as we have here. It is not an action ex contractu nor an action ex delicto. It is not a common law action. The action is purely a creature of the statute. The power that gave it, according to this holding, has the power to take it away, and that is exactly what Congress did so far as the Portal-to-Portal Act is concerned.

Let me go on to one or two other cases that were very persuasive. United States Fidelity Company v. United States for use and benefit of Struthers Wells Company, 209 U.S. 306, 28 S.Ct. 537, 539, 52 L.Ed. 804. This was an action brought upon a contract bond, and the Supreme Court says this:

"There are certain principles which have been adhered to with great strictness by the courts in relation to the construction of statutes, as to whether they are or are not retroactive in their effect." The Court goes on to state: "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied." In the instant case, we have words that are so clear, strong, and imperative that no other meaning can be applied to them. A holding along the same line is United States v. St. Louis, San Francisco & Texas Railway Co., 270 U.S. 1, 46 S.Ct. 182, 183, 70 L.Ed. 435, where it was stated:

"A statute shall not be given retroactive effect, unless such a construction is required by explicit language or by necessary implication, is a rule of general application. It has been applied by this court to statutes governing procedure."

I am not going to attempt to discuss the question as to whether these claims are procedural ones or not. I merely mention these cases in support of the position that I have taken that we have here an Act of Congress that is not open to construction as to what the language means nor what the Congress means.

In Moore Ice Cream Company v. Rose, 289 U.S. 373, 53 S.Ct. 620, 621, 77 L.Ed. 1265, the petitioner brought suit against the Collector of Internal Revenue to recover income and profit taxes alleged to have been wrongfully collected. The statute under which the action was brought had been amended as to filing protests. It provided "This section shall not affect any proceeding in court instituted prior to the enactment of this act." Of course, there

was a saving clause. The Court said: "Of the tokens within the statute, the saving clause, * * * is entitled to a leading place. 'This section shall not affect any proceeding in court instituted prior to the enactment of this act.' The implication is that any proceeding not covered by the exception is to be subject to the rule."

Applying this decision to the situation we have for disposition here, why, certainly, it is so clear that I feel that it is a waste of words to reiterate that Congress intended to save no rights of action. It intended to take rights and remedies away, and that is exactly what it has done. Now, as to whether the way is left open for a litigant to go into the state court is really not a matter to be passed upon in this case. I might, as dicta, say that Congress intended to bar all such actions, but I do not know how that is going to be helpful to either side here, because it is really not one for consideration here.

The only possible ground upon which this Court could base a denial of these motions to dismiss would be upon the fundamental ground of constitutionality. I think a District Court should always hesitate to find an act of the Congress unconstitutional, but, in a matter of such great moment as is here involved, not alone to the litigants but to the nation as a whole, I cannot bring myself to a finding that the Congress, after many weeks of labor, did not seriously consider the question of constitutionality. By reason of my own service in that body, I know that the judiciary committees of both houses are made up generally of eminent lawyers and have very excellent staffs. This is not hastily considered legislation, but carefully and thoughtfully and deliberately planned and prepared legislation. The issue of constitutionality, I am sure, was given further consideration, after the Congress had enacted the legislation, when it went to the Executive branch of the government. I have before me here the message of the President returned with the signed bill, indicating that it was not signed with a feeling on the part of the Executive that he desired such legislation, but, rather, the message would indicate that it was signed with some degree of reluctance. Had there been doubt in the minds of those in the Department of Justice or others identified with the Executive Departments of the government that this legislation was really unconstitutional, they undoubtedly would have advised the Chief Executive to that effect. I shall assume that they did not so advise him.

I would not hesitate, if fully persuaded that there was only one side to this question, to hold it unconstitutional, but I am persuaded that the weight of authority and the logic lying back of these arguments is on the side of constitutionality, rather than unconstitutionality. I shall have to grant the motions and dismiss the actions and allow exceptions. You will have the matter in such shape that if you desire to take it to an appellate court you may expeditiously do so.