580 F.Supp. 797 (1984)
BROTHERHOOD OF LOCOMOTIVE ENGINEERS, R.E. Cooley, K.L. Heniken, Patrick J. Murphy, W.G. Smith, John A. Stimoc, and on behalf of themselves and all other similarly situated locomotive engineers from the former Chicago, Rock Island and Pacific Railroad Company and Lines West of Chicago, Milwaukee, St. Paul, and Pacific Railroad Company, Plaintiffs,
v.
BURLINGTON NORTHERN, INC., The Atchison, Topeka and Santa Fe Railway Company, Union Pacific Railroad Company and United Transportation Union, Defendants.
No. 81-K-391.
United States District Court, D. Colorado.
February 27, 1984.
*798 Harold A. Ross, Ross & Kraushaar Co., L.P.A., Cleveland, Ohio, Martin D. Buckley, Hornbein, MacDonald, Fattor & Buckley, Denver, Colo., for plaintiffs Brotherhood of Locomotive Engineers.
Barry McGrath, St. Paul, Minn., John L. Pilon, Denver, Colo., for Burlington Northern, Inc.
Ronald A. Lane, Chicago, Ill., Donald B. Gentry, Grant, McHendrie, Haines & Crouse, Denver, Colo., for Atchison, Topeka and Santa Fe R. Co.
Barbara W. Zandbergen, Union Pacific R. Co., Omaha, Neb., James A. Jablonski, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for Union Pacific R. Co.
Norton N. Newborn, Cleveland, Ohio, David B. Kiker, Morrisard & Rossi, P.C., Aurora, Colo., for United Transp. Union.

ORDER GRANTING MOTION TO DISMISS
KANE, District Judge.
This case comes before me on cross motions for summary judgment and on defendants' motion to dismiss for lack of subject matter jurisdiction. BLE and some of its members filed this case in March, 1981, seeking declaratory and injunctive relief on behalf of a class of locomotive engineers who were separated from employment on the Chicago, Milwaukee and St. Paul Railroad and the Chicago, Rock Island and Pacific Railroad. Jurisdiction was predicated upon 28 U.S.C. § 1331. The complaint alleges that the hiring preference provisions of the Milwaukee Railroad Restructuring Act, 45 U.S.C. § 907 (the Milwaukee Act), and the Rock Island Railroad Transition and Employee Assistance Act, 45 U.S.C. § 1004, (the Rock Island Act), grant plaintiffs first preference for any vacancies arising in the crafts of locomotives and firemen.[1] Plaintiffs allege that defendants *799 have filled the vacancies either with nonqualified persons hired from the streets or from other crafts not qualified to fill the vacant jobs. The defendants[2] advance three reasons why I should grant summary judgment in their favor. They say that the Milwaukee and Rock Island Acts do not require them to give preference to Milwaukee and Rock Island engineers over their own nonqualified employees; that the Milwaukee and Rock Island Acts are invalid because repugnant to the Bankruptcy Clause of the United States Constitution; and that the preferential hiring provisions constitute special legislation in violation of the Fifth Amendment.
This case was at issue in August, 1983 when it was assigned to me upon Judge Winner's retirement. All parties had thoroughly and exhaustively briefed and argued it on the merits. It came to defendants attention in September, however, that I might not have jurisdiction to hear the case by dint of some obscure legislation which Congress passed in early 1983, the Pipeline Safety Act of 1983, Pub.L. No. 97-468, § 235, 96 Stat. 2543, now codified at 45 U.S.C. § 797c(g). In spite of its name, the Act dealt with a variety of matters, including an amendment to the hiring preference provisions of the Northeast Rail Service Act of 1981, a statute dealing with the disposition of Conrail, upon its failure. The Conrail hiring preference statute included an administrative procedure, culminating in arbitration, for resolution of hiring disputes. The Pipeline Safety Act of 1983 extended that procedure to the hiring preference provisions of the Milwaukee and Rock Island Acts.
As amended, 45 U.S.C. § 797c(g) now requires disputes, grievances and claims arising under the hiring preference provisions of the Milwaukee and Rock Island Acts to be reviewed and investigated by the Railroad Retirement Board "in accordance with the procedures set forth in section 153 of this title." The Railway Labor Act establishes a comprehensive mechanism for resolving employee grievances. The procedure culminates in final and binding arbitration before the National Railroad Adjustment Board, or another board voluntarily established by rail labor and management. When defendants learned of this legislation, they moved to dismiss. I must determine whether Congress' action in passing the Pipeline Safety Act has removed this court's subject matter jurisdiction.
The starting place for any intelligent discussion of the problem is Justice Holmes' opinion in Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152 (1927). There, plaintiffs sought to restrain the collection of taxes imposed by Puerto Rico laws. After the Circuit court affirmed the lower court's dismissal, plaintiffs appealed to the Supreme Court. While the appeal was pending, Congress amended the jurisdictional statute to read:
"That no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto [sic] Rico shall be maintained in the district *800 court of the United States for Porto [sic] Rico."
275 U.S. at 61, 48 S.Ct. at 23. Justice Holmes thought the statute meant what it said. He reversed the cases and sent them back to the district court with orders to dismiss them for want of jurisdiction. He also distinguished between applying the statute literally and giving it retrospective application.
To apply the statute to present suits is not to give it retrospective effect but to take it literally and to carry out the policy it embodies of preventing the Island from having its revenues held up from injunctions....
275 U.S. at 61, 48 S.Ct. at 23.
Some 30 years later, the court faced a similar problem in Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1951), a suit by a civilian fire chief to recover overtime compensation allegedly due for his services. Again, Congress amended the jurisdictional statute explicitly to deny jurisdiction in such a suit:
"The district courts shall not have jurisdiction under this section of:
* * * * * *
(2) Any civil action to recover fees, salary, or compensation for official services of officers or employees of the United States."
343 U.S. at 113, 72 S.Ct. at 582. The Supreme Court's review of the appropriate legislative history convinced it that when Congress withdrew jurisdiction, it did not intend to preserve pending cases.
Absent such a reservation, only the Court of Claims has jurisdiction to hear and determine claims for compensation brought by employees of the United States, even though the District Court had jurisdiction over such claims when petitioner's action was brought.
343 U.S. at 115, 72 S.Ct. at 583. The court stated its rule in the following language: "[W]hen a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall within the law...." 343 U.S. at 116-7, 72 S.Ct. at 584.[3] A footnote to the opinion affirmed the Smallwood notion that "[t]his jurisdictional rule does not affect the general principle that a statute is not to be given retrospective effect unless such construction is required by explicit language or by necessary implication." 343 U.S. at 117 n. 8, 72 S.Ct. at 584 n. 8.
Lower court cases have not always scrupulously followed the rules set out in Bruner and Smallwood. The cases arising under the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-262, are provocative precedents. That act effectively overruled three earlier Supreme Court cases which had interpreted "work week" within the meaning of the Fair Labor Standards Act of 1938. The three cases[4] held that "work week"
included underground travel in iron ore mines and similar preliminary and incidential activities of employees in connection with their work, which to a large extent had not theretofore been regarded as compensable unless the parties so agreed.[5]
With something on the order of five billion dollars in claims pending,[6] Congress enacted *801 the Portal to Portal Act. It wiped out the substantive liabilities by providing that "no employer shall be subject to any liability or punishment" under the FLSA for its failure to compensate the preliminary and incidental work. More to the point, the Act removed jurisdiction from federal and state courts "of any action or proceeding ... to enforce liability or impose punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938...." 29 U.S.C. § 252(a), (c).
Attacked as a retroactive destruction of rights vested under the Fifth Amendment, the Act was uniformly upheld. See Thomas v. Carnegie-Illinois Steel Corp., 174 F.2d 711 (3d Cir.1949). Many courts did so without regard to the jurisdictional provision. In the Second Circuit, Judge Chase said:
A few of the decisions sustaining ... the Portal-to-Portal Act have done so on the ground that since jurisdiction of federal courts other than the Supreme Court is conferred by Congress, it may at the will of Congress be taken away in whole or in part.... We think, however, that the exercise by Congress of its control over jurisdiction is subject to compliance with at least the requirements of the Fifth Amendment.
Battaglia v. General Motors Corp., 169 F.2d 254, 257 (2d Cir.1948).[7]
The District of Columbia Circuit Court recently considered a case similar to the instant one in deRodulfa v. United States, 461 F.2d 1240 (D.C.Cir.1972). At issue were applications for attorneys fees arising out of two wartime death compensation cases. The government did not appeal the underlying suits, only those portions of the judgment dealing with attorney fees. While the appeals were pending, Congress amended the jurisdictional statute to make the administrative decision "final and conclusive...." 38 U.S.C. § 211(a) (1964) (quoted in 461 F.2d at 1244-45 n. 14.) After reviewing the extensive and detailed history behind the amendment, the court concluded
that Section 211(a) in amended form was directed at pending as well as future judicial reviews of the Administrator's determinations on claims for noncontractual benefits.
461 F.2d at 1249-50. Troubling to me in the deRodulfa opinion is not so much the result, but the court's suggestion that prospective application "is decidely the preferred judicial treatment of legislation." 461 F.2d at 1247. This is undoubtedly so,[8] but not, if my interpretation of Bruner and Smallwood is correct, in the area of jurisdiction.
I understand Bruner as requiring an affirmative congressional act or language to maintain federal jurisdiction over pending cases where the original basis for jurisdiction has been repealed. As the court said in a pre-Bruner case:
Jurisdiction in such cases was conferred by an act of Congress, and when that act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the act of Congress.
Assessor v. Osbornes, 76 U.S. (9 Wall.) 567, 575, 19 L.Ed. 748 (1869).
The problem of the jurisdiction vel non of this court is made exceedingly difficult by the fact that the legislative history of the Pipeline Safety Act of 1983 is scattered, complex, and ultimately frustrating. The best place to begin is with the Railroad Rail Reorganization Act of 1973, Pub.L. No. 93-236, § 101, 87 Stat. 986 (1974) (the 3-R Act).
Congress passed the 3-R Act as a means of preserving "[e]ssential rail service in the midwest and northeast region[s] of the United States...." 45 U.S.C. § 701. Portions of the Act sought to protect employees *802 of insolvent railroads from the harsher effects of reorganization. 45 U.S.C. §§ 771-779 (1976). The Act, however, made no provision for preferential hiring. On the other hand, the 3-R Act specifically provided for binding arbitration for
[a]ny dispute or controversy with respect to the interpretation, application, or enforcement of the provisions of this subchapter ... as provided in section 153, Second, of this title....
45 U.S.C. § 777 (1976).
Congress added a preferential hiring provision to the 3-R Act in 1980. See 45 U.S.C. § 780 (Supp.1980). The mandatory arbitration provision remained intact. In 1981, Congress substantially revamped all of the 3-R Act's employee protection provisions. See Northeast Rail Service Act of 1981, Pub.L. No. 97-35, Title XI, 95 Stat. 357 (1981). Congress' decision was influenced, in part, by the Milwaukee and Rock Island Acts. S.Rep. No. 97-139 97th Cong. 1st Sess. 283, 287, 332, reprinted in [1981] U.S.Code Cong. & Ad.News 396 at 578, 580, 620. The employee protection provisions of the 3-R Act were repealed and replaced by a new Subchapter VII. 45 U.S.C. §§ 797-797m (Supp.1982). The new preferential hiring statute for Conrail employees was drawn directly from the preferential hiring provisions of the Milwaukee and Rock Island Acts. As the Senate report put it:
For Conrail employees who fail to receive offers from acquiring railroads, this section provides the same rights to be hired by other railroads on a priority basis that was afforded to dismissed Rock Island and Milwaukee Railroad employees.
S.Rep. No. 97-139, 333, reprinted in [1981] U.S.Code Cong. & Ad.News at 621.
Of interest to me, is Congress's treatment of benefits and disputes over benefits notwithstanding the repeal of §§ 771-780. The Act specifically provided that
Notwithstanding the repeal made by paragraph (1) of this subsection
* * * * * *
(B) any dispute or controversy regarding such benefits shall be determined under the terms of the law in effect on the date the claim arose.
Pub.L. 97-35, Title XI, § 1441(a)(2), 95 Stat. 669 (1981).
Turning to the more immediate history of the present dispute, the railroad provisions of the Pipeline Safety Act were derived largely from H.R. 6308, 97th Cong., 2d Sess., 128 Cong.Rec. H10,680 (1982), the Rail Safety and Improvement Act of 1982. When the Pipeline Safety Act was near passage, Representative Florio made this point explicit.
It is important to note that the Rail Provisions of this legislation are derived from H.R. 6308. Accordingly, to the extent applicable, the legislative history of H.R. 6308 shall be part of the legislative history of H.R. 3420.
128 Cong.Rec. H10,691 (daily ed. Dec. 21, 1982) (Remarks of Rep. Florio). See also, 128 Cong.Rec. E5,463 (daily ed. Dec. 29, 1982) (Remarks of Rep. Lent). H.R. 6308 passed the House, as amended, on August 12, 1982. Title II of that Act, the Bankrupt Railroad Service Preservation and Employee Protection Act of 1982, makes no reference at all to the critical amendments which showed up later as § 235 of the Pipeline Safety Act. See H.Rep. No. 97-571(I), 97th Cong., 2d Sess. (1982). I can only conclude that the failure to require binding arbitration in H.R. 6308 was a congressional oversight, corrected sometime between August and December, 1982.
I understand the law under Smallwood and Bruner to be that all pending cases fall when Congress repeals a jurisdictional statute, at least in the absence of affirmative language to the contrary. Given the long standing binding arbitration under the Conrail statute, given Congress's careful and explicit preservation of rights and jurisdiction when it repealed the Conrail employee protection statutes, and given the multiple cross-references between the Conrail, Milwaukee and Rock Island statutes, I can only conclude that Congress did not intend jurisdiction to remain in this court after the passage of *803 the 1982 amendments in the Pipeline Safety Act. The motion to dismiss for lack of subject matter jurisdiction is therefore granted.
NOTES
[1] Section 907, Title 45 provides:

Each person who is an employer of the Milwaukee Railroad on September 30, 1979, and who is separated or furloughed from his employment with such railroad (other than for cause) prior to April 1, 1984, as a result of a reduction of service by such railroad shall, unless found to be less qualified than other applicants, have the first right of hire by any other rail carrier that is subject to regulation by the Commission for any vacancy that is not covered by (1) an affirmative action plan, or a hiring plan designed to eliminate discrimination, that is required by Federal or State statute, regulation, or executive order, or by the order of a Federal court or agency, or (2) a permissible affirmative action plan. For purposes of this section, a rail carrier shall not be considered to be hiring new employees when it recalls any of its own furloughed employees.
Section 1004, Title 45 is almost identical:
(a) Each person who is an employee of the Rock Island Railroad on August 1, 1979, and who, prior to January 1, 1984, is separated or furloughed (other than for cause) from his employment with such railroad, or from his employment with another rail carrier providing temporary service over lines of the Rock Island Railroad, as a result of a reduction of service by such railroad or such temporary service carrier shall, unless found to be less qualified than other applicants, have the first right of hire by any other rail carrier that is subject to regulation by the Commission for any vacancy that is not covered by (1) an affirmative action plan, or a hiring plan designed to eliminate discrimination, that is required by Federal or State statute, regulations, or Executive order, or by the order of a Federal or State court or agency, or (2) a permissible voluntary affirmative action plan. For purposes of this section, a rail carrier shall not be considered to be hiring new employees when it recalls any of its own furloughed employees.
(b) The rights afforded to Rock Island Railroad employees by this section shall be co-equal to the rights afforded to Chicago, Milwaukee, Saint Paul and Pacific Railroad Company employees by section 907 of this title.
[2] The defendants in this case are Burlington Northern, Inc., The Atchison, Topeka and Santa Fe Railway Company, Union Pacific Railroad Company, and Union Transportation Union.
[3] Courts and scholars alike have wrestled with Congressional power and authority to restrict lower federal court jurisdiction. The earliest cases are collected in deRodulfa v. United States, 461 F.2d 1240, 1251 n. 56 (D.C.Cir.1972). Some useful authorities on the problem include: Wright, Miller and Cooper, Federal Practice and Procedure § 3526 (1975); Hart, The Power of Congress to Limit the Jurisdiction of the Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953); Eisenberg, Congressional Authority to Restrict Lower Federal Court Jurisdiction, 83 Yale L.J. 498 (1974).
[4] Tennessee Coal Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944); Jewell Ridge Corp. v. Local No. 6167, 325 U.S. 161, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945); and Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).
[5] Bator, Shapiro, Mishkin & Wechsler, Hart and Wechsler's The Federal Courts and the Federal System (2d ed. 1973) 322.
[6] Id. at 323.
[7] Most of the district court cases are set out in Battaglia, 169 F.2d at 257, and Seese v. Bethlehem Steel Co., 168 F.2d 58, 61 (4th Cir.1948).
[8] The cases are collected in deRodulfa, 461 F.2d at 1247 nn. 30-35.