Dragisa Sajich, Plaintiff-Appellant, v. Olga Sajich, Defendant-Appellee.

Gen. No. 69–168.

Second District.
September 3, 1970.

■■■■■■■■■■■■■■
■■■■■■■■■■■■■■
■■■■■■■■■■■■■■

Samuel S. Siegel and Harold A. Cowen, of Chicago, for appellant.

Donna & Gilman, of Chicago, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Dragisa Sajich, obtained a divorce by default from the defendant, Olga Sajich, on August 27, 1952. In October, 1968, the defendant, who had been served by publication, filed a petition to vacate the decree of divorce, alleging that it had been procured through fraud, in that the plaintiff's affidavit for publication asserted that her place of residence could not be ascertained, and that her last known address was Moravci, Serbia, Yugoslavia. The petition further alleged that the plaintiff was aware that the defendant's last known address was Kadina Luka, Yugoslavia. After an extended hearing, the trial court granted the defendant the relief sought in her petition, and vacated the decree.

The plaintiff appealed and contends that the defendant did not prove that he fraudulently made and executed the affidavit for publication, and also urges that the defendant was guilty of laches in presenting her petition.

The evidence was conflicting, and that on the plaintiff's behalf indicated that he and the defendant were married in Moravci, Yugoslavia, in 1927; that after their marriage they lived in Kadina Luka during the summertime and operated a small farm in that village; and that they lived in Moravci, with a cousin, in the wintertime.

Kadina Luka did not have a post office; Moravci did. The two villages were approximately four miles apart. The plaintiff admitted that they did not live in Moravci every winter.

The plaintiff testified that he was taken prisoner by the Germans in 1941 and was a prisoner of war until 1945; that he did not return to Yugoslavia after the war because the communists were in control of the country; that in 1950 he migrated from Germany to this country, and that he asked his wife and children to join him, but his wife preferred to remain in Yugoslavia.

The plaintiff further testified that he wrote numerous letters to her from 1941 until the beginning of 1952, most of which he addressed to Moravci, because there was a post office there; that he addressed some mail to Kadina Luka; and that he sent money to four of his sons, and most of the money orders were addressed through Moravci.

He also stated that prior to entering the war and being taken prisoner, he received mail through the post office in Moravci; that the defendant and plaintiff were married in the church in Moravci; that when they were in Moravci, the post office delivered the mail to them there; that when they were in Kadina Luka, the post office delivered the mail to them there; and that the postmaster in Moravci knew most of the families who lived in the nearby surrounding villages, including Kadina Luka.

While a patient in a German hospital, the plaintiff met his present wife, Mathilda, whom he married in November of 1952, subsequent to the date of the divorce decree, which was entered in this proceeding. In 1954, the plaintiff and his second wife, Mathilda, bought a ten-unit apartment building, in partnership with Svetosar, a cousin of the plaintiff. In 1952, he introduced Mathilda to Svetosar as his wife. When they bought the apartment building with Svetosar, Mathilda signed all of the necessary papers as the plaintiff's wife, in the presence of

434

Svetosar. The plaintiff and Mathilda, as husband and wife, lived in the apartment building, which was also the place of residence of Svetosar, who visited with them almost daily. In 1956, Svetosar visited the Kadina Luka and Moravci area, and, upon his return to this country, told the plaintiff that the defendant did not object to being divorced as long as the plaintiff supported the children.

In 1962, the plaintiff brought Budimir, a son, who was born in 1935, to this country. The plaintiff, Mathilda, Svetosar and his wife, met Budimir at the train station. The plaintiff introduced Mathilda to Budimir as his wife. Budimir was immediately taken to a tuberculosis sanitarium where he was visited by the plaintiff and Mathilda several times a week during his three-month stay there. Budimir then lived with the plaintiff and Mathilda in their apartment for eight to ten months.

The plaintiff testified that Budimir told him that the defendant was unhappy about the divorce, but that she did not know about the plaintiff's remarriage. Budimir subsequently married and the plaintiff and Mathilda, as husband and wife, attended and took part in his large wedding and reception.

In 1968, the plaintiff brought his son, Grujica, who was born in 1940, to this country. The plaintiff, Mathilda, Svetosar and his wife, met Grujica and his wife at the train station, and the plaintiff introduced Mathilda as his wife. Grujica and his wife then lived with the plaintiff and Mathilda, in their new home, for approximately three months. During this time, the plaintiff and Mathilda openly lived together as husband and wife.

The defendant's portion of the conflicting evidence was that she and the plaintiff had lived in Kadina Luka, where her family's farm was located; that she had been in Moravci only once, and that was when they were married; that the mail she received from her husband was addressed to her at Kadina Luka; and that she did not

learn of her husband's divorce action until after she arrived in this country in June, 1968.

Budimir testified that when he came to America there was no post office in Kadina Luka or Moravci; and that the post office receiving mail for Kadina Luka was located in Ljig. He further stated that while he lived with the plaintiff and Mathilda, his father did not tell him that he was married to Mathilda, and refused to talk about her. He admitted that after his marriage, he lived in the same apartment building as his father and Mathilda for an additional ten months.

Grujica testified that on their arrival in this country, he and his wife lived with his father and Mathilda in their house; that his father refused to talk about Mathilda with him; and that the post office for Kadina Luka was in Ljig, not in Moravci.

There was a great deal of other testimony by the members of the Sajich family and by others, but we deem it unnecessary to repeat it all here. It appears that the villages of Moravci, Ljig and Kadina Luka are all near each other—two to five miles apart—and that Kadina Luka did not have a post office. The testimony was in conflict as to whether the mail for Kadina Luka came through the post office at Moravci or Ljig. Perhaps the testimony on behalf of both parties was correct—the mail for Kadina Luka, on occasion, would come through either Moravci or Ljig.

When the plaintiff sought admission to this country, he filed all of the required documents with the immigration authorities, including a statement that he had been a farmer, with his last permanent residence at "Kadinaloga Yougoslavia."

The clerk of the trial court testified, in essence, that she could not ascertain from the court files whether the original notification of the lawsuit was ever delivered by the postal authorities, or whether it was returned undelivered; and that if a notice was returned indicating

436

that the addressee could not be found, there was neither a notation of such fact nor such returned envelope in any court file.

The plaintiff strongly urges that the testimony of Budimir and Grujica indicated their hostility toward him, and that their testimony that they had lived with him and Mathilda for the periods indicated, as well as other related facts, rendered incredulous their assertion that they did not know of the plaintiff's marriage to Mathilda or that they did not discuss this with their mother. A review of the entire records persuades us to the same view, but this is not a critical factor with reference to our decision.

The essence of the defendant's claim is that she has a right at this time to set aside the divorce decree obtained in 1952, in that the plaintiff fraudulently concealed her address from the court in his affidavit for publication and thereby induced the court to believe it had jurisdiction to enter a decree for divorce.

 In Broberg v. Mann, 66 Ill App2d 134, 213 NE2d 89 (1965), this court recently had occasion to outline the elements necessary to establish fraud, and at page 139 we stated that the party charged with fraud must either have knowledge of the falsity of his statement, or make the statement in culpable ignorance of its truth or falsity, since it is the state of mind and intent of the party charged to deceive which is the foundation of fraud. On page 140, we quoted from Bundesen v. Lewis, 368 Ill 623, 632, 15 NE2d 520 (1938) to the effect that the presumption, in law, is that men are honest; and if one seeks to establish fraud as against another, it must be proven affirmatively by clear and convincing evidence. Also see: Carter v. Carter, 283 Ill 324, 332, 119 NE 269 (1918).

When we consider all of the conflicting evidence, it is apparent that all parties agreed that there was no post office in Kadina Luka. The defendant's family had farmland in or near the village, and the plaintiff and the de-

fendant had farmed this land. The villages of Moravci, Kadina Luka and Ljig were very close to each other and apparently Kadina Luka was the smallest of the three small villages. The families of both the plaintiff and the defendant had lived in this general area for a long period of time.

We believe that if the plaintiff had intended that the defendant should receive no notice of the pending suit, he would have listed some address other than Moravci as the last known address of the defendant. Even when we consider the testimony on behalf of the defendant, we are lead to the conclusion that the plaintiff might reasonably have assumed that if a notice of the pending suit were sent to the defendant, addressed to Moravci, there would be a likelihood she would receive it. From the record, the proximity of these three villages, their size and character, the acquaintance of their people, through attendance of religious services and ceremonies and by virtue of other circumstances, is apparent.

Also, we do not find that the statement made by the plaintiff on his immigration papers is inconsistent with our conclusion. When he entered this country he listed himself as having been a farmer with residence at Kadina Luka. The plaintiff testified that during the time he lived in Yugoslavia with the defendant, their principal place of residence was the farm in Kadina Luka. The use of Moravci on the affidavit for mailing purposes for this court proceeding is reasonable, in view of the testimony of all witnesses that Kadina Luka had no post office. It is consistent with his testimony that Moravci had a post office from which mail was delivered to Kadina Luka. We find nothing improbable with the conclusion that Ljig may also have had such a post office. Under all of the facts before us, the statements in the affidavit of the plaintiff—particularly in view of his limited education and his difficulty with our language even at the time of the hearing on this matter—seem to be those of a man

438

who was attempting to comply with the requirements of our law and not of one who was fraudulently misrepresenting an address in order to avoid notification.

The conduct of the plaintiff subsequent to the divorce also is inconsistent with any such fraudulent intent. He and Mathilda lived openly as husband and wife in close business and personal association with Svetosar. They must have assumed that Svetosar, in writing to his wife —a neighbor of the defendant—would have mentioned this; that Svetosar while visiting his wife in Yugoslavia, prior to bringing her to this country, would have talked about the plaintiff and Mathilda with the plaintiff's friends, relatives and neighbors in Kadina Luka and the surrounding area.

Certainly, the conduct of the plaintiff in bringing Budimir and Grujica to this country, and in arranging for each of them to live with him and Mathilda, as well as his action in participating in Budimir's wedding and other family events, was not compatible with the fraudulent intent urged by the defendant.

Under the circumstances of this case, the delay of sixteen years between the date of the divorce and the filing of the petition to set aside the decree, particularly in view of the subsequent marriage of the plaintiff, requires strong and persuasive evidence to support the defendant's charge of fraud, lack of notice or of knowledge of facts sufficient to be put on notice. Sloan v. Sloan, 102 Ill 581, 584 (1882).

■ The evidence in this case was not sufficiently clear and convincing to establish fraud on the part of the plaintiff and the decision of the trial court was against the manifest weight of the evidence and the law.

Accordingly, the judgment of the trial court is reversed and judgment is entered herein for the plaintiff.

Judgment reversed and judgment for the plaintiff.

ABRAHAMSON and SEIDENFELD, JJ., concur.