AURORA TOWER FINANCE CORPORATION, Plaintiff-Appellant, *v.* EFFANIO CERVANTES *et al.*, Defendants-Appellees.

(No. 70-208;

Second District—August 5, 1971.

Redman, Shearer, O'Brien and Blood, of St. Charles, for appellant.

George W. Presbrey, of Aurora, for appellees.

Mr. PRESIDING JUSTICE MORAN delivered the opinion of the court:

Plaintiff confessed judgment on defendants' note. Defendants secured opening of the judgment and pleaded that the debt underlying the judgment was barred by a discharge in bankruptcy. Plaintiff replied claiming that the discharge, as to it, was prevented because the loan was based upon defendants' fraudulent financial statement. After a bench trial, the judge found plaintiff had "failed to sustain its burden of proof".

Plaintiff appeals contending that defendants failed to carry their burden of proving that they did not intend to deceive plaintiff and that the lender did not rely on the statement. Plaintiff also contends that the finding of the trial court was against the manifest weight of the evidence.

The undisputed evidence shows that the defendants went to plaintiff's office on April 21, 1969, and there re-financed a delinquent loan. Prior to doing so, they signed a document entitled, FINANCIAL STATE-MENT. The printing on the statement directed defendants to list all of their debts and stated, "We rely on your good faith and the truth of your representations." Debts totalling $3,411.14 were scheduled. Later, defendants were declared bankrupt. The debt to plaintiff was one of the debts discharged. The bankruptcy schedules listed $22,007.47 in debts incurred prior to April 21, 1969.

Plaintiff's evidence consisted of the testimony of defendants (called under section 60 of the Civil Practice Act), Ralph Whiten and Donald DeVasier, plaintiff's employees. Defendant Effanio Cervantes identified the financial statement in question. He claimed that when he was handed the statement, he read it and stated that he did not have room to list all of his debts; that he was told then to list just those for which he had a contract; that plaintiff knew he (Cervantes) had quite a few debts because the company had previously made a "personal payment plan" for him. Mr. Cervantes then admitted to several specific debts which were not listed including some for which he did have a contract. Mrs. Cervantes stated that her answers would be the same as those of her husband.

Ralph Whiten testified that he was present when defendants signed the note. He admitted the note refinanced a previous loan. Whiten said he never told defendants to just list a few details on the statement. On cross-examination he gave an unclear response when defense counsel

implied that someone besides Whiten and the defendants had filled in the portion of the statement which listed the debts. To the question, "They came down because they were delinquent and you asked them to come down, isn't that right?" he replied, "There could have been circumstances." In response to further cross-examination, he admitted he had not brought with him to court any of the company records which would show the reason for defendants' visit; that the file contained an old financial statement of defendants'; that at the time of the refinancing, he could have looked in the file to determine their financial condition but that he did not; and that defendants took home very little cash from the new note because most of the difference between it and the old note was taken up by insurance charges made by the company. Whiten then testified that if defendants had listed all their debts, they would not have received the loan.

Donald DeVasier, plaintiff's office manager, testified that he did not hold that position at the time of the loan and could only describe the procedure generally followed by the company.

In defense, Mr. Cervantes testified that defendants had been in debt to plaintiff continuously since 1960; that on the day of the loan in question, he and his wife went to the company at its request, for the purpose of discussing the delinquent loan; that he talked to Don Schiff who was plaintiff's office manager at the time, in addition to talking with Whiten; that the conversation concerned the possibility of a new note which would pay all of his bills; that plaintiff rejected this possibility because they owed too much money; that Schiff then asked defendant to refinance the note; and that Whiten brought the papers into the booth while Schiff was present. In response to a question concerning what happened when the financial statement was completed, Mr. Cervantes replied, "I told him . . . I said, 'Gee, I haven't got room in here for everything.' I don't know whether I told him or Don. He said, 'That's all right; we don't have to have' . . ." His response was cut short by his attorney who said, "Room, you're talking about these things . . .", and named some of the listed debts.

Plaintiff admitted that Schiff was still in its employ but did not call him in rebuttal.

On October 19, 1970, the Bankruptcy Act was amended to provide that a creditor of a non-commercial debtor must appear in the bankruptcy court at the time of the discharge proceedings if he desires to assert the non-dischargability of his debt. Failure to do so results in the debt being discharged. Bankruptcy 11 U.S.C.A., Sec. 35 (a) (2) 1970; 1 Collier Bankruptcy Manual, Sec. 17.10 (3). However, the Act in force at the

time of this suit (February 9, 1970) excepted from discharge certain debts where:

"* * * liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."

Consequently, a creditor could sue upon an obligation incurred prior to bankruptcy and if the defendant raised the defense of discharge it would then be up to the creditor to prove his claim to be one of the exceptions to discharge. The plaintiff in the case at bar relied upon the above quoted exception.

█ In order to prove that the discharge did not prevent enforcement of the judgment, plaintiff was required to show actual fraud. (*Sweet v. Ritter Finance Company* (W.D. Va. 1967), 263 F.Supp. 540, 543.) That is, plaintiff had to prove (1) the debtor made a materially false representation; (2) that at the time he knew they were false: (3) that he made them with the intention and purpose of deceiving the creditors; (4) that the creditor relied upon such representations and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *Nickle Plate C. Federal Credit Union v. White* (1970), 120 Ill.App.2d 91, 94; 8 Remington on Bankruptcy, sec. 3320.

█ In an action based upon fraud, the elements necessary must be affirmatively proven by clear and convincing evidence. *Sajich v. Sajich* (1970), 128 Ill.App.2d 432-437; *Turzynski v. Libert* (1970), 122 Ill.App. 2d 352, 359.

Plaintiff first contends that the defendant did not disprove that he intended to defraud the plaintiff and that the defendant did not disprove that plaintiff relied upon the false financial statement. It was not defendant's duty to disprove the elements of plaintiff's case. It was the plaintiff's obligation to affirmatively prove by clear and convincing evidence the elements of actual fraud. Until this occurred, the burden of proof remained with the plaintiff. The second contention of the plaintiff more accurately leads into what this court believes to be plaintiff's sole issue on appeal. Were the elements of intent to defraud, and reliance thereon, so firmly established by the proofs of plaintiff herein that the trial court's findings were against the manifest weight of the evidence?

Unless the court, in a bench trial, is clearly wrong, a reviewing court will not upset its findings of fact. It is up to the trial judge in such in-

212

stance to determine the credibility of the witnesses and the weight to be given to their testimony. His conclusions will not be disturbed unless manifestly contrary to the weight of the evidence. *Country Mut. Ins. Co. v. Murray* (1968), 97 Ill.App.2d 61, 75.

■ Plaintiff's argument is based primarily on only that evidence most favorable to itself. However, we have reviewed the entire record and find that there was sufficient evidence for the trial court to conclude that, when the consolidation of all debts was discussed, plaintiff knew (or should have known) the true financial situation of the defendants; that the defendants did not intend to deceive the plaintiff, but were present at plaintiff's office at the latter's insistence because of a delinquency in their earlier loan. The conversation related by Mr. Cervantes, to the effect that there was insufficient room on the financial statement to list all of his debts, if believed by the judge, would dispel any reliance on the part of the plaintiff.

■ We therefore hold that the judgment of the trial court was not against the manifest weight of the evidence and that plaintiff did not prove its case by clear and convincing evidence as required.

Judgment affirmed.

ABRAHAMSON and KRAUSE, JJ., concur.