JAMES D. YOUNG *et al.*, Plaintiffs-Appellants, *v.* THE PUBLIC BUILDING COMMISSION OF ST. CLAIR COUNTY *et al.*, Defendants-Appellees.

(No. 72-105; ▮)

Fifth District—May 31, 1972.

Bock & Stenger, of Belleville, (Ralph T. Stenger, of counsel,) for appellants.

Eugene Widman, of Belleville, for appellees.

David C. Roston, of Chicago, for *amicus curiae*.

PER CURIAM:

Plaintiffs, who are citizens, residents, taxpayers and property owners of the County of St. Clair, appeal from an order of the Circuit Court of St. Clair County, dismissing their complaint for a temporary injunction by which they seek a judicial moratorium on the scheduled demolition of the courthouse of St. Clair County so that the following may be done: (a) Remand the question of its preservation to the General Assembly for further action; (b) afford the Legislature the opportunity to enact appropriate legislation by transferring the courthouse to the State of Illinois as a state monument; and (c) conduct a referendum for the people of the county on the question.

The planned action being thus attacked is premised on the authority of the Public Building Commission of St. Clair County which was formed according to Illinois Statute (Ill. Rev. Stat. 1971, ch. 85, par. 1032-1044) in 1966. We think it is clear from the undisputed facts in this case and on the basis of the law in Illinois that the Public Building Commission of St. Clair County has broad powers to "provide space for the conduct of the executive, legislative and judicial functions of government", such powers specifically by statute encompassing selection of sites, acquisition of real estate, demolition of buildings, etc. (Ill. Rev. Stat. 1971, ch. 85, par. 1044.) The vote for demolition—the anticipated result which this complaint attempts to avoid—took place on November 11, 1971. The procedure followed by the Public Building Commission was legally correct in all aspects.

In the complaint there is a strong theme of accusation against the defendant for rushing into the decision to demolish the St. Clair County Courthouse. The exhibits submitted by the plaintiffs clearly refute such a criticism. According to evidence in the form of exhibits made part of plaintiffs' complaint, concern about preservation of the courthouse has been publicized since at least as long ago as November 28, 1966. The

Belleville Community Council was advised by a spokesman of the St. Clair County Historical Society on February 15, 1967, that the Society recommends that the present courthouse be retained. Thus, plaintiffs' evidence demonstrates that there was a general awareness, at least among the newspaper reading public, that there was a possibility of defendants' plans being put into motion and yet no positive action to change these was taken, or, at least, none of the legal nature. More to the point, these plaintiffs by the evidence they offer with their complaint must have been so aware.

■■ Plaintiffs contend "the trial court erred in refusing to accept these two points: (a) Judicial recognition of the need to protect the public trust, and (b) judicial intervention as the only means to assure some mechanism is made available to resolve the conflict." This is an attempt to place on the court an onus it does not properly bear. The state legislature or county or city governments are the proper branches of government "to assure some mechanism is made available."

■■ We agree with plaintiffs that they have rights as residents in a trust of public property. (*Paepcke v. Public Building Comm. of Chicago* (1970), 263 N.E.2d 11.) However, here we find no evidence of an illegal diversion of use, misuse, or improper reallocation. Quite the contrary, there definitely is no diversion, change in use, or reallocation involved. Rather, the Commission, acting consistently with the authority granted it by statute and responsive to the governing body of St. Clair County, the Board of Supervisors, is continuing the original and long-established use of this real estate as a space for county governmental functions.

There is no dispute but that both the Public Building Commission and the Board of Supervisors which requested new and improved space for county government operations were aware that there were individuals and groups opposed to its plans to demolish the courthouse. Nonetheless, the Commission chose not to retain the existent courthouse but rather to demolish it and use the site it occupied plus other adjacent real estate for a new, larger, and improved county government center.

Most, if not all the argument of *Amicus Curiae*, Landmarks Preservation Council, could be used without any change in substance but with considerable change in interpretation by defendants. For example, their brief points out that Section 1044(a) requires that any site acquired by a Public Building Commission be "sufficient to provide for proper architectural setting and adequate landscaping." There is no evidence that the Commission failed in this duty.

*Amicus Curiae's* query, "Could it be seriously argued that the Public Building Commission of Sangamon County was intended to have or does have the power to acquire and demolish the State Capitol Building or

the Lincoln Home, for example, and to erect on such site a building for the housing of county agencies and functions, without express legislative authority?" is relevant only in that it contains certain elements that distinguish this case from those in which an existent use of public lands is being encroached on, changed, or abolished. The homestead of Abraham Lincoln is the subject of a statute, Ill. Rev. Stat., ch. 84, approved June 16, 1887, which specifically provides for its care, custody, and exhibition. Similarly, the Sangamon County Court House which at one time was the State Capitol and we assume is the State Capitol Building referred to, is specifically designated a "State Memorial." (Ill. Rev. Stat., ch. 105, sec. 468h.) In contrast, the courthouse at Belleville is and always was exactly that—a structure in continuous use for courthouse purposes. Age and events may have added to its utilitarian purposes a patina of aesthetic interest and historical significance, but it nonetheless legally and practically remains a courthouse. Thus *Amicus Curiae* errs in describing the planned demolition and replacement as a "diversion in use." If there is a conflict of opinion as to its proper categorization and use, the resolution of such conflict is for the legislature or municipal corporate authorities, not the courts.

■■ "The courts can serve only as an instrument of determining legislative intent as evidenced by existing legislative wisdom." (*Paepcke v. The Public Building Com. of Chicago* (1970), 46 Ill.2d 330, 262 N.E.2d 11.) Further, the courts cannot base their opinions on polls, newspaper editorials, letters, resolutions by interested groups, or their personal interests and sympathies in disregard of the law.

■■ The facts before us and existing legislation do not warrant issuing an injunction or in any other way allowing plaintiffs the remedies they seek. Defendants executed their duties and responsibilities according to the statute defining their status. The Circuit Court of St. Clair County properly allowed the motion of defendants to dismiss the plaintiffs' complaint and its judgment is affirmed.

Judgment affirmed.