Raymond O'DONNELL, Plaintiff,

v.

Stanley T. KUSPER, Cook County Clerk, in his individual and official capacity, Office of the County Clerk of Cook County, Stanley Kusper Campaign Committee, Harrison Lithographing, Inc., J.J. Collins' Sons, Cahill Printing Company, F.J. Nenning & Sons, M. Kallis & Company, Inc., Northwestern Printing House, Inc., and the Board of Commissioners of Cook County, and the following Commissioners, Matthew Bieszczat, Charles Bowen, Bernard Carey, Frank Chesrow, George Dunne, Carl Hansen, Irene Hernandez, May McDonald, Daniel O'Brien, Jeanne P. Quinn, Matt Ropa, Richard A. Siebel, John H. Strozer, Jr., Martin Tuchow, Harold L. Tyrrell, Samuel G. Vaughan, and Joseph Woods, both in their individual and official capacity, Defendants.

No. 83 C 9717.

United States District Court, N.D. Illinois, E.D.

Jan. 21, 1985.

John L. Gubbins, Freeman, Atkins & Coleman, Ltd., Chicago, Ill., for plaintiff.

Joseph V. Roddy, Richard M. Daley, State's Atty. of Cook County, Michael B. Nash, Nash & Nash, E. Bryan Dunigan, Linda Coffing, Sidney C. Kleinman, Ltd., James Vogler, Jeffrey Spears, Winston & Strawn, Roger L. Price, Michael G. Berland, Donald S. Lowitz, Lawrence A. Serlin, Aaron, Schimberg, Hess & Gilbert, David A. Ward, Harvey M. Silets, Royal B. Martin, Jr., Jayne Carr Thompson, Silets & Martin Ltd., Chicago, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are defendants' various motions to dismiss and motions for sanctions. Also before the court is plaintiff's motion to file a Second Amended Complaint. The court's subject matter jurisdiction is asserted to rest upon 28 U.S.C. § 1331 (1982) and 18 U.S.C. § 1964 (1982). For the reasons set forth herein, defendants' motions to dismiss are granted and defendants' motions for sanctions are denied. Plaintiff's motion to file a Second Amended Complaint is also denied.

## BACKGROUND

On December 30, 1983, plaintiff, Raymond O'Donnell, a resident taxpayer of Cook County, Illinois filed a three count complaint in this court. Count I alleged a substantive violation of the Racketeer Influenced and Corrupt Organizations ("RICO") statute. 18 U.S.C. § 1962(c). Count II alleged a conspiracy to violate the RICO statute. 18 U.S.C. § 1962(d). Count III, a pendent state action, purported to allege a violation of Chapter 34, Section 1001 *et seq.* of the Illinois Revised Statutes. ILL.REV.STAT. ch. 34, ¶ 1001 *et seq.* (1983).

The various defendants named in the plaintiff's initial complaint included the Cook County Clerk, his election campaign committee, the office of the County Clerk, five printing companies located within the County, the County Board of Commissioners, and all of the individual Board and Board finance committee members. The complaint alleged the Board, upon the urging of the County Clerk, approved contracts for the printing of election ballots with the five named printing companies. According to the plaintiff's complaint, the contracts with the five named printers were extended and approved without complying with the public notice and sealed competitive bidding requirements of ILL.

REV.STAT. ch. 34, ¶ 1006 (1983). The complaint further alleges that various of the named printers made substantial contributions to the County Clerk's election campaign. In his prayer for relief, plaintiff sought to require the defendants to return to Cook County all of the money paid out on the allegedly unlawful contracts. In addition, plaintiff sought treble damages on behalf of the County.

On February 2, 1984, plaintiff filed his First Amended Complaint. The plaintiff's First Amended Complaint simply added various allegations to the effect that one of the five named printers had substantially completed the printing it was contracted to perform at the time the County Clerk urged the Board to authorize the contract. No counts were added or deleted; the prayer for relief was not altered.

On February 29, 1984, the defendants filed various motions to dismiss. The defendants' motions sought to dismiss Counts I and II on the grounds that they failed to allege a separate enterprise, any predicate offense or any RICO injury. In addition, defendants contended the plaintiff lacked standing to bring Counts I and II. The defendants also sought to dismiss Count III on the grounds no pendent jurisdiction remained.

On March 7, 1984, this court set a briefing schedule allowing the plaintiff until March 21, 1984 to file a response to the various motions to dismiss and giving the defendants until March 28, 1984 to reply. On March 19, 1984, plaintiff filed a motion for an extension of time, until April 27, 1984, "... to file his consolidated answer to [the] defendants' motions to dismiss." In this court's absence, that extension was granted by the Honorable Judge Milton I. Shadur. On April 5, 1984, in view of the extension granted the plaintiff, this court extended the time for the defendants to file their replys to May 7, 1984.

On May 2, 1984, plaintiff again presented a motion seeking an extension of time, until May 25, 1984, "... in which to respond to [the] Defendants' motions to dismiss." The court again granted the requested extension. On May 8, 1984, the defendant Clerk filed his initial motion to recover costs and attorneys' fees; the motion arose out of the allegedly improper notice given with respect to plaintiff's May 2, 1984 motion for an extension of time. After the hearing on the defendant Clerk's motion, the court shortened the "[t]ime for plaintiff to file [a] consolidated response to defendants' [m]otion[s] to [d]ismiss with supporting memoranda" to May 25, 1984. The court took the defendant Clerk's motion for costs under advisement. On May 17, 1984, upon the plaintiff's renewed motion, the time for responding was again extended to May 25, 1984.

On May 25, 1984, plaintiff filed a motion to add Omega Graphics as a plaintiff, an amended nine-count complaint, and a memorandum in support of his proposed amended complaint. In addition to seeking recovery on behalf of the County, Omega Graphics prayed for damages on its own behalf. On June 5, 1984, defendants filed a joint motion for sanctions, for denial of leave to file the Second Amended Complaint, to strike the Second Amended Complaint, and to dismiss the First Amended Complaint with prejudice. All of the motions were taken under advisement.

On September 6, 1984, plaintiff presented a motion for leave to file his amended complaint and for leave to add Omega Graphics as a plaintiff. Defendants renewed their previously filed motions. The entire matter was again taken under advisement.

## DISCUSSION

### A. Motion To Dismiss: Standing

Defendants challenge the plaintiff's standing to bring the present action on two distinct grounds. First, the majority of the defendants contend the plaintiff lacks standing because he has failed to allege a cognizable "racketeering injury." Second, relying upon *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) and *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982), the defendant

Commissioners contend the plaintiff, as a taxpayer, lacks a sufficient "personal stake" to sue on behalf of the County.[1]

Title 18, Section 1964, 18 U.S.C. § 1964 (1982), provides that:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit including a reasonable attorney's fee.

In order to allege a violation of section 1962, plaintiff must allege a defendant participated in, or conspired to participate in, a "pattern of racketeering activity." A "pattern of racketeering activity" is defined as "... at least two acts of racketeering activity ..." occurring within a specified period. Among the types of conduct expressly designated as "racketeering activity" are various crimes indictable under state and federal law.

The majority of the defendants contend the "by reasons of" language of § 1964 requires the plaintiff to allege he has suffered some "racketeering injury" separate and apart from any injury he has suffered as a result of the "predicate acts" of racketeering activity allegedly giving rise to the violation of § 1962. Absent such an injury, defendants contend the plaintiff lacks standing to bring a suit based upon a RICO violation.

■ Defendants' argument is of no avail. The Seventh Circuit has recently made clear that it is not necessary to allege a separate "racketeering injury" apart from the injury caused by the underlying predicate acts in order to allege a violation of RICO. *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 398 (7th Cir.1984). Thus, to the extent the defendants' motions rely upon the absence of any such "racketeering injury," they are denied.

The question of the plaintiff's standing to sue *on behalf of* the County presents a far more difficult question. Plaintiff points to various state statutes which he asserts allow him to bring the present action. The only statute plaintiff cites expressly providing for a derivative taxpayer action, ILL.REV.STAT. ch. 34, ¶ 959 (1983), however, does not apply in the present case. That statute would only be applicable if the plaintiff had alleged the County had not provided for the printing of election ballots in its appropriation bill, or that the County had paid more for the printing of election ballots than it had provided for in its appropriation bill. Neither is alleged to be the case.

■ The statute governing any action in the present case, ILL.REV.STAT. ch. 34, ¶ 1008 (1983), is silent as to any derivative taxpayer action. Moreover, no Illinois court has decided whether such an action should be implied under that statute. Despite the fact that one statute expressly provides for a derivative taxpayer suit and the other is silent, however, Illinois courts probably would recognize a taxpayer derivative suit under both provisions. Based upon taxpayers' interest in public property, Illinois courts have generally allowed taxpayers to bring actions premised upon violations of state and local law. *See Young v. Public Building Commission of St. Clair County*, 5 Ill.App.3d 892, 284 N.E.2d 485, 487 (1st Dist.1972). Thus, in the view of this court, Illinois courts would probably recognize the plaintiff's standing to bring an action based upon a violation of the statutory notice and competitive bidding requirements contained in § 1006. ILL. REV.STAT. ch. 34, ¶¶ 1006, 1008 (1983).

■ The mere fact that *Illinois courts* would recognize the plaintiff's standing to bring such an action, however, does not mean he has standing to bring a *federal action* arising from the same occurrence. The plaintiff's standing to assert a federally created right is not controlled by state law. As one commentator has noted, "[i]f

---

**1.** *Flast* and *Larson* are inapplicable to the present action since they involve *direct* constitutional actions rather than derivative damages claims.

a challenged state act indeed violates federal law, no reason has yet been found to rest federal standing determinations on the disparate allocations of power that underlie fifty different governmental structures." Wright & Miller, *Federal Practice and Procedure*, § 3531.10 (1984), p. 653. Thus, the determination of whether the plaintiff, as a taxpayer, has standing to bring a RICO action on behalf of a governmental entity must be determined under federal law.

No court has been faced with the issue of whether a taxpayer has standing to bring a RICO action on behalf of an injured governmental entity. The issue has surfaced with some frequency, however, under the private enforcement provisions of the antitrust laws. 15 U.S.C. § 15 (1982). Title 15, section 15, provides in relevant part:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefore ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

In each of the decisions resolving the issue under the antitrust laws, federal standing has been denied to taxpayers. In *Cosentino v. Carver-Greenfield Corporation*, 433 F.2d 1274 (8th Cir.1970), for example, the court denied a taxpayer standing to bring a derivative antitrust action on behalf of the City of Omaha despite the fact that Nebraska law permits a taxpayer to bring a derivative action when municipal funds are unlawfully expended. In reaching this conclusion, the court noted it was unable to find any decision "... which allows a private citizen to assert derivatively an antitrust claim on behalf of the city in which he lives." *Id.* at 1277. The court reasoned,

> A citizen of Omaha, Nebraska, cannot expect to elevate himself by means of a lawsuit to a position in which he can exercise the power of a public authority, *at least* absent abusive or illegal acts by city officials, which are not alleged in this case. *Id.* (emphasis added).

Similarly, in *Ratliff v. Burney*, 657 F.2d 640 (4th Cir.1981), the court affirmed a lower court dismissal of a taxpayer action on the grounds that: (1) the plaintiff could not maintain an individual action because he was not in the "target area" of the alleged antitrust violation; and (2) the plaintiff could not maintain a derivative action because he failed to allege fraud by the county officers. The appellate court noted, however, that "[t]he [district] court did not decide whether derivative actions analogous to shareholder suits are available to *taxpayers* seeking to sue under Section 4 of the Clayton Act." (emphasis added) 657 F.2d at 642.

In *Ratliff* and *Ragar*, the courts were not required to decide whether taxpayers have standing to bring an action analogous to a shareholder derivative suit because, even assuming the recognition of an analogous action, the plaintiffs had failed to allege fraud on the part of the governmental officials responsible for bringing such an action. In shareholder derivative suits, such allegations are necessary to allow the shareholder to represent the injured corporation in lieu of the corporate officers. *See Ash v. International Business Machines, Inc.*, 353 F.2d 491, 493 (3rd Dist.1965), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966), and *Swanson v. Traer*, 249 F.2d 854, 858 (7th Cir.1957); *see also* Fed.R.Civ.Pro. 23.1.

This court has been unable to locate any decisions determining whether a shareholder has standing to maintain a RICO action on behalf of an injured corporation. As in *Ratliff* and *Ragar*, however, this court need not decide the issue because, even assuming the recognition of a RICO shareholder derivative action and an analogous taxpayer derivative action, the plaintiff has failed to allege any fraud on the part of the County official responsible for deciding whether to institute any RICO action. While the plaintiff has alleged fraud on the part of the County Clerk and County Commissioners, he has not alleged any fraud on the part of the County State's Attorney.

Under Illinois law, a state's attorney has the duty "[t]o prosecute ... all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State or his county...." ILL.REV.STAT. ch. 14, ¶ 5(2) (1983). Interpreting that statute, Illinois courts have long recognized that, with respect to the state's attorney, "[t]he county board has no power to lessen his duties or to curtail the exercise of his lawful authority or to control him therein." *Wilson v. County of Marshall*, 257 Ill.App. 220, 224 (2nd Dist.1930). Indeed, the Illinois Supreme Court has recognized the right of a state's attorney, on behalf of his county, to bring an action for diversion of public money in violation of a state statute against the members of his county board of commissioners, his county treasurer and his county clerk. *People ex rel. Courtney v. Ashton*, 358 Ill. 146, 153–54, 192 N.E. 820 (1934). Thus, the County official responsible for maintaining a RICO action in the present case is the State's Attorney.[2]

Under the circumstances of this case, plaintiff lacks standing to maintain the present action. There has been no allegation that the State's Attorney's failure to institute a similar action was fraudulent, collusive or represented anything other than the honest exercise of his legal judgment. This court is in agreement with the court in *Cosentino* that a taxpayer of Cook County cannot expect to elevate himself, by means of a lawsuit, to a position in which he can exercise the power of the State's Attorney, at least absent abusive or illegal acts by the State's Attorney. Defendants' motion to dismiss for lack of standing, therefore, must be allowed.[3]

## B. Motion For Leave To Amend

■ A remaining question is whether this court should allow the plaintiff leave to file his proposed Second Amended Complaint. That complaint purports to add, or more accurately substitute, Omega Graphics as a plaintiff in this action. While it is not clearly plead, Omega Graphics would apparently seek to recover RICO damages on its own behalf, as well as on behalf of the County.

To the extent that it would seek to recover on behalf of the County, Omega Graphics would have no better standing than the present plaintiff. To the extent that it would seek to recover on its own behalf, Omega Graphics would be asserting a new action, distinct from the plaintiff's present claim. Moreover, Omega Graphics injuries and remedies would not be co-extensive with the County's. Thus, the issue is whether the court should allow a new plaintiff, seeking different relief, to substitute for a plaintiff dismissed for lack of standing.

This court is unaware of any rule or decision authorizing such a procedure. Rule 17(a) was clearly not intended to accomplish such a result. Rule 17(a) is intended to allow substitution when an improper plaintiff has been inadvertently named; it is not intended to permit an attorney to locate and substitute a new plaintiff, suing upon a new claim, simply to sustain a pending action. Wright & Miller, *Federal Practice and Procedure*, § 1555 (1984). Thus, plaintiff's motion to file a Second Amended Complaint is denied.[4]

---

**2.** Plaintiff tacitly admits the State's Attorney's authority to bring the instant action, disclosing that he requested the State's Attorney to file such an action before he took it upon himself to do so. The plaintiff does not indicate why the State's Attorney declined to file suit, but he does not allege the State's Attorney's motives were improper.

**3.** Plaintiff does not allege standing to sue on his own behalf. Were he to have done so, this court would have had little difficulty in denying him standing. *See Ragar v. J.T. Raney & Sons*, 388 F.Supp. 1184 (E.D.Ark.) *aff'd* 521 F.2d 795

(8th Cir.1975) (denying a taxpayer standing to bring an antitrust action on his own behalf); *See also In re Industrial Gas Antitrust Litigation*, 681 F.2d 514 (7th Cir.1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983) (dismissing an employee's antitrust action for lack of standing, in part, because "... his injury [was] simply too remote from the alleged illegal conduct." *Id.* at 519).

**4.** Rule 17(a) might support allowing the County to substitute for O'Donnell as plaintiff; according to O'Donnell, however, the County, through the State's Attorney, has expressed an unwilling-

## C. Motions For Sanctions

■ The final issue is the imposition of any sanctions. Defendants seek costs and attorneys' fees based upon the plaintiffs having:

... repeatedly ignored the orders of this Court, violated the Federal Rules of Civil Procedure by improperly noticing motions and other pleadings, by improperly serving or failing to serve other parties, and by misrepresenting to defense counsel the date, time and location at which a motion will be heard.

This court finds no evidence of such repeated violations. While some confusion was generated by plaintiff's improper notice of his second motion for an extension, the inconvenience was minor. This is not the type of conduct for which this court normally assesses sanctions.

Moreover, the court finds nothing objectionable about the plaintiff's attempting to file a Second Amended Complaint in response to the defendants' motions to dismiss. In large part, the defendants' motions were devoted to technical pleading deficiencies; the standing issue, for example, was barely developed outside the context of the rejected "racketeering injury" requirement. The plaintiff was merely attempting to cure defendants' technical objections by filing his Second Amended Complaint. While it was improper to file the amended complaint and add an additional party without leave of court, the court believes the plaintiff's conduct was not deliberate. Once the error was brought to the plaintiff's attention, plaintiff filed an appropriate motion. Once again, this is not the type of deliberate conduct for which this court is accustomed to awarding sanctions. Thus, defendants' motions for sanctions are denied.

### CONCLUSION

For all of the reasons set forth herein, defendants' motions to dismiss are granted, and defendants' motions for sanctions are denied; plaintiff's motion to file a Second Amended Complaint is also denied.

ness to bring such an action. Such actions, however, have been recognized. *See Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160 (5th Cir.1984).