**John W. MATHEWS, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**KIDDER, PEABODY & CO., INC., a Delaware corporation, KP Realty Inc., a Delaware corporation, HSM, Inc., a Texas corporation, Henry S. Miller Co., Henry S. Miller Management Corporation, Henry S. Miller Appraisal Corporation, HSM Real Estate Securities Corporation, and Miller Real Estate Services Corporation, a Texas corporation, Defendants.**

Civil Action No. 95–85.

United States District Court, W.D. Pennsylvania.

Sept. 26, 1996.

Picadio, McCall, Kane & Norton, Anthony P. Picadio, Pittsburgh, PA, Thomas W. Henderson, Pittsburgh, PA, for Plaintiff.

Kirkpatrick & Lockhart, David A. Brownlee, Pittsburgh, PA, for Defendant Kidder Peabody, K.P. Realty Advisors.

Thorp, Reed & Armstrong, William M. Wycoff, Pittsburgh, PA, for All Remaining Defendants.

## *OPINION*

and

## *ORDER OF COURT*

AMBROSE, District Judge.

Currently pending before the Court is the Motion for Leave to File First Amended Complaint (Docket # 37) filed by Plaintiff John W. Mathews ("Plaintiff Mathews"). Plaintiff Mathews has alleged on behalf of himself and a putative class (excluding Defendants and their directors, officers, agents, servants and affiliates), encompassing "all persons residing in the United States who purchased partnership units in KP/Miller Realty Growth Fund I, KP/Miller Growth Fund II and KP/Miller Realty Growth Fund III in the initial offering of such securities," that the Defendants' actions violated 18 U.S.C. § 1962(b), (c) and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO") and as well has alleged state law claims of breach of fiduciary duty and negligent misrepresentation. The Defendants, Kidder, Peabody & Co. Incorporated, KP Realty Advisers, Inc., HSM, Inc., Henry S. Miller Co., Henry S. Miller Management Corporation, Henry S. Miller Appraisal Corporation; HSM Real Estate Securities Corporation; and Miller Real Estate Services Corporation (the "Defendants") oppose the Plaintiff's Motion and in addition, ask this Court to dismiss the Plaintiff's Complaint in its entirety pursuant to Fed.R.Civ.P. 12(h)(3)

on the theory that the Private Securities Litigation Reform Act of 1995 (the "Reform Act") removes this Court's jurisdiction over the federal claims in this action. For the reasons set forth below, the Plaintiff's Motion for Leave to File First Amended Complaint is granted in part and denied in part.

I. *The applicability of the Private Securities Litigation Reform Act of 1995 to this lawsuit.*

Plaintiff Mathews seeks to amend his Complaint pursuant to Fed.R.Civ.P. 15 in the following manner: (1) add additional named plaintiffs and (2) add factual allegations. In response, the Defendants have raised numerous legal arguments regarding why the Plaintiff should not be permitted to amend the Complaint.

Section 107 of the Reform Act, the section of the Reform Act that contains the amendment relevant to this case, reads in pertinent part: "[s]ection 1964(c) of Title 18, United States Code, is amended by inserting before the period ', except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 ...'." 109 Stat. 737, 758 (December 22, 1995). Unamended, 18 U.S.C. § 1964(c) ("§ 1964(c)") read "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).

The RICO claim contained in the Proposed Complaint against the Defendants is based upon "conduct that would have been actionable as fraud in the purchase or sale of securities." Specifically, Plaintiff Mathews has alleged that in the 1980's, the Defendants devised a scheme to mislead a large number of unsophisticated "Mom and Pop" investors (in excess of 6000), through fraudulent conduct, into purchasing a series of limited partnerships in order to generate excessive fees and income for the Defendants. Ultimately, three limited partnership funds were organized to perpetuate the Defendants' scheme:

KP/Miller Realty Growth Fund I; KP/Miller Realty Growth Fund II; and KP/Miller Realty Growth Fund III. Sales of these three funds raised approximately $85 million.

The Defendants argue that applying the analysis set forth by the United States Court in *Landgraf v. USI Film Products*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994), regarding whether newly enacted statutes should be applied to pending cases, § 107 of the Reform Act should be applied to the Plaintiff's RICO claim because (1) "Congress's elimination of civil RICO as a method of litigating securities fraud cases, the specific wording of the Applicability Provision of the Reform Act [§ 108][1] and the legislative history surrounding the RICO Amendment and the Applicability Provision all demonstrate Congress's intent that the RICO Amendment should be generally applicable to all cases alleging 'conduct that would have been actionable' under the Securities Laws" and (2) even if the intent of Congress to apply § 107 retroactively is not clear, the application of § 107 to this case would not have a "retroactive effect" on Plaintiff Mathews' RICO claim because § 1964(c) is a jurisdictional statute. Defendants' Opposition Brief, pp. 19–20. Indeed, with respect to the Defendants' argument that § 1964(c) is a jurisdictional statute, the Defendants request that I dismiss the Plaintiff's Complaint in its entirety pursuant to Fed.R.Civ.P. 12(h)(3) on the grounds that once the Reform Act was enacted into law by Congress on December 22, 1995, jurisdiction over private civil RICO claims was divested from the district courts and therefore, I no longer have jurisdiction over the Plaintiff's civil RICO claim.

In the *Landgraf* decision, the Court addressed the standards to be applied when ascertaining the applicability/retroactivity of a new law to cases pending when the law was enacted. Specifically, the *Landgraf* Court held that the following standard for determining retroactivity of new law to pending cases was to be applied:

> [w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at ——, 114 S.Ct. at 1505. Significantly, for purposes of the case *sub judice*, in discussing the application of new legislation to pending cases and the issue of "retroactivity," the *Landgraf* Court further stated that "[w]e have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed" and cited to a number of its previous decisions including *Bruner v. United States*, 343 U.S. 112, 116–117, 72 S.Ct. 581, 584–85, 96 L.Ed. 786 (1952);[2] *Hallowell v.*

1. Section 108 of the Reform Act, entitled "Applicability," states: "[t]he amendments made by this title shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, commenced before and pending on the date of enactment of this Act." 109 Stat. 737, 758 (December 22, 1995).

2. In *Bruner v. United States*, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952), at issue was the jurisdiction of the federal district court to hear a claim under the Tucker Act. When the case was first filed, the Tucker Act granted to federal district courts jurisdiction, concurrent with the Court of Claims, over certain civil actions against

the United States, including suits by an employee (but not an officer) of the United States to recover compensation from the United States; one of ten plaintiffs in *Bruner* was an employee, but not an officer, of the United States. Thereafter, while the suit was pending, the Tucker Act was amended such that the jurisdiction of the federal district courts over actions for compensation brought by employees of the United States was withdrawn.

Thus, the issue before the Court was whether the district court still had jurisdiction over the pending action. The Court held that the district court no longer had jurisdiction over the matter. This conclusion was first reasoned upon the fact

*Commons,* 239 U.S. 506, 508–09, 36 S.Ct. 202, 203–04, 60 L.Ed. 409 (1916);[3] *The Assessors v. Osbornes,* 9 Wall 567, 575, 19 L.Ed. 748 (1869);[4] *Andrus v. Charlestone Stone Prod-* *ucts Co., Inc.,* 436 U.S. 604, 607–08 n. 6, 98 S.Ct. 2002, 2005 n. 6, 56 L.Ed.2d 570 (1978);[5] *United States v. Alabama,* 362 U.S. 602, 604, 80 S.Ct. 924, 926, 4 L.Ed.2d 982 (1960);[6] and

that there was no reservation of jurisdiction over pending cases contained in the amendment. "Absent such a reservation, only the Court of Claims has jurisdiction to hear and determine claims for compensation brought by employees of the United States even though the District Court had jurisdiction over such claims when petitioner's action was brought." *Id.* at 115, 72 S.Ct. at 583–84, *citing Merchants' Insurance Co. v. Ritchie,* 5 Wall. 541, 18 L.Ed. 540 (1867). The Court then discussed at length its decisions in *Ritchie* and *The Assessors v. Osbornes,* 9 Wall. 567, 575, 19 L.Ed. 748 (1869).

In *Ritchie,* the Court had jurisdiction over a case which arose under the internal revenue laws when it was first filed, but while the case was pending, an act was passed that withdrew the court's jurisdiction over cases arising under internal revenue cases without any reservation of pending cases. In holding that the court no longer had jurisdiction over the matter, the *Ritchie* Court had stated:

[i]t is clear, that when the jurisdiction of a cause depends upon a statute the repeal of the statute takes away the jurisdiction. And it is equally clear, that where a jurisdiction, conferred by statute, is prohibited by a subsequent statute, the prohibition is, so far, a repeal of the statute conferring the jurisdiction.

*Id.* at 116, 72 S.Ct. at 584.

In *The Assessors,* a case arising under the same internal revenue jurisdictional statute as applicable in *Ritchie,* the Court stated that " '[j]urisdiction in such cases was conferred by an act of Congress, and when that act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no savings clause, all pending actions fell, as the jurisdiction depended entirely upon the act of Congress'." *Id.*

Finally, the *Bruner* Court reasoned that "[t]his rule—that when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court" and cited to a number of its decisions in support of this proposition.

Notable for purposes of the issue before this Court, the *Bruner* Court also emphasized:

[t]his case is not affected by the so-called general savings statute which provides that 'repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute.' Congress has not altered the nature or validity of petitioner's rights or the Government's liability but has simply reduced the number of tribunals authorized to hear and determine such rights and liabilities.

*Id., citing, Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916).

3. In *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916), the federal court had jurisdiction over the suit when the action was first filed. Prior to the matter being adjudicated, however, by statute, jurisdiction over the action was changed from the United States courts to the Secretary of the Interior with no exception being made in the statute for pending litigation. Thereafter, the suit was dismissed for want of jurisdiction and the plaintiff appealed arguing that based upon Rev.Stat. § 12, Comp.Stat.1913, § 14, which stated that the repeal of any statute shall not extinguish any liability incurred under it and those decisions concerning suits upon bonds given to the United States wherein intervening statutes were not applied to pending cases, that the amendment should not be applied to the pending case. *Id.* The Court disagreed with the plaintiff's argument and affirmed the decision of the lower court, reasoning that "the reference of the matter to the Secretary, unlike the changes with regard to suits upon bonds, takes away no substantive right, but simply changes the tribunal that is to hear the case." *Id.*

4. See footnote 2, *supra.*

5. In *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 98 S.Ct. 2002, 56 L.Ed.2d 570 (1978), an action to review a decision of the Secretary of the Interior, the Court addressed the validity of the plaintiff's allegations in his complaint that jurisdiction was based upon the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and 28 U.S.C. §§ 1361 and 1391(e). First, the Court stated that 28 U.S.C. § 1391(e) is a venue statute and does not confer jurisdiction. Second, the Court noted that while the APA may have been a proper basis for jurisdiction in the federal circuit court at the time the case was filed in 1973, the Court had subsequently determined that the APA does not confer subject-matter jurisdiction in the federal courts to review agency action and therefore, the Court could not have jurisdiction over the matter pursuant to the APA. Finally, the *Andrus* Court noted that it did not have to decide whether jurisdiction would lie under 28 U.S.C. § 1361 because jurisdiction in an action to review a decision of the Secretary of the Interior was clearly conferred by 28 U.S.C. § 1331(a), as amended in 1976 (i.e. after the suit had been commenced), and the fact that in 1973 the plaintiff's complaint did not allege $10,000 in controversy was immaterial.

6. In *United States v. Alabama,* 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960), the United States brought suit against the State of Alabama and others, alleging a course of racially discrimi-

*Stephens v. Cherokee Nation*, 174 U.S. 445, 478, 19 S.Ct. 722, 734, 43 L.Ed. 1041 (1899).[7] The *Landgraf* Court also noted that "[a]ppli-cation of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'." *Id.* at ——, 114 S.Ct. at 1502, *citing*, *Hallowell*, 239 U.S. at 508, 36 S.Ct. at 203.

natory practices calculated to deprive African–American citizens of their voting rights in viola-tion of the United States Constitution and 42 U.S.C. § 1971(a) of the Civil Rights Act of 1957; the proceeding was brought by the United States pursuant to 42 U.S.C. § 1971(c). The district court dismissed the complaint against the State of Alabama on the ground that the Civil Rights Act of 1957 did not authorize the suit against the State. The Court of Appeals affirmed the hold-ing and the United States Supreme Court grant-ed certiorari.

Thereafter, shortly before the case was heard by the Supreme Court, the Civil Rights Act of 1960 became law. Section 601(b) of the Act amended 42 U.S.C. § 1971(c) "by expressly au-thorizing actions such as this to be brought against a State." Thus, the initial decision be-fore the Court was the applicability of § 601(b) to the instant action. The Court observed that "[u]nder familiar principles, the case must be decided on the basis of law now controlling, and the provisions of § 601(b) are applicable to this litigation" and held that pursuant to § 601(b), the district court had jurisdiction to entertain the action against the State.

7. In *Stephens v. Cherokee Nation*, 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041 (1899), the United States Supreme Court examined, *inter alia*, the validity of its hearing appeals from decrees of the United States court in the Indian Territory pur-suant to the Act of July 1, 1898, an act which extended the remedy of appeal to the Supreme Court. The appellant argued that the Act "in extending the remedy by appeal to this court, was invalid, because retrospective, an invasion of the judicial domain, and destructive of vested rights." *Id.* at 477, 19 S.Ct. at 734.

Contrary to the appellant's argument, the Court noted:

[b]y its terms the act was to operate retrospec-tively, and as to that it may be observed that, while the general rule is that statutes should be so construed as to give them only prospective operation, yet, where the language employed expresses a contrary intention in unequivocal terms, the mere fact that the legislation is retroactive does not necessarily render it void.... [T]he grant of a new remedy by way of review has been often sustained under par-ticular circumstances.

*Id.* The *Stephens* Court then went on to explain that "the validity of remedial legislation of this sort cannot be questioned unless in violation of

The Court continued, "[p]resent law normally governs in such situations because jurisdic-tional statutes 'speak to the power of the court rather than to the rights or obligations of the parties'." *Id.* at ——, 114 S.Ct. at 1502, *citing*, *Republic National Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring).[8]

some prohibition of [the United States Constitu-tion]." *Id.* The Court also stated:

nor can the act be properly regarded as de-stroying any vested right, since the right assert-ed to be vested is only the exemption of these judgments from review; and the mere expecta-tion of a share in the public lands and moneys of these tribes, if hereafter distributed, if the applicants are admitted to citizenship, cannot be held to amount to such an absolute right of property that the original cause of action, which is citizenship or not, is placed by the judgment of a lower court beyond the power of re-examination by a higher court, though sub-sequently authorized by general law to exercise jurisdiction.

*Id.*

8. In *Republic National Bank of Miami v. United States*, 506 U.S. 80, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992), Justice Thomas filed a concurring opinion because he disagreed with the majority's decision to discuss the issue of jurisdiction under the circumstances of the case. Justice Thomas then went on to discuss the concept of retroac-tive application of newly enacted statutes to pending claims. The Justice began his discus-sion on jurisdiction by noting the general rule that "statutes affecting substantive rights or obli-gations are presumed to operate prospectively only." *Id.* at 100, 113 S.Ct. at 565. He then explained that: "[b]ut not every application of a new statute to a pending case will produce a 'retroactive effect'. '[W]hether a particular ap-plication is retroactive' will 'depen[d] upon what one considers to be the determinative event by which retroactivity or prospectivity is to be cal-culated'." *Id.* at 100, 113 S.Ct. at 565 (internal citations omitted). Justice Thomas then summa-rized the Supreme Court's position on the appli-cability of newly enacted statutes restricting or enlarging a court's jurisdiction to pending cases:

[i]n the case of newly enacted laws restricting or enlarging jurisdiction, one would think that the 'determinative event' for retroactivity pur-poses would be the final termination of the litigation, since statutes affecting jurisdiction speak to the power of the court rather than to the rights or obligations of the parties. That conclusion is supported by longstanding prece-dent. We have always recognized that when jurisdiction is conferred by an Act of Congress and that Act is repealed, 'the power to exercise jurisdiction [is] withdrawn, and ... all pending actions f[a]ll, as the jurisdiction depend[s] en-

In response to the Defendants' contention that the Reform Act bars this action altogether, Plaintiff Mathews argues that the Reform Act is not to be applied retroactively to this law suit, which was pending when the Reform Act was passed, because the Reform Act is not a jurisdictional statute but rather, one that alters substantial rights the Plaintiff and the other class members had when the suit was filed and in support thereof, cites to the United States Supreme Court's decision in *Landgraf, supra.* The Plaintiff also cites, *inter alia,* to two district court decisions which held that pursuant to the principles espoused in *Landgraf,* § 107 of the Reform Act is not to be applied retroactively to a RICO claim currently pending at the time the Reform Act was enacted because application of the Reform Act to the RICO claims would impair substantial rights possessed by the plaintiffs. *See In re Prudential Securities Incorporated Limited Partnerships Litigation,* 930 F.Supp. 68 (S.D.N.Y.1996) and *District 65 Retirement Trust for Members of the Bureau of Wholesale Sales Reps. v. Prudential Securities, Inc.,* 925 F.Supp. 1551 (N.D.Ga.1996).

■ After careful consideration of the submissions of the parties, I hold first that while I agree with the Defendants that § 1964(c) is, in part, a jurisdictional statute,[9] I also find that the effect of applying § 107 to the facts presented in this case is distinguishable from the effects obtained in those United States Supreme Court cases cited to in the Defendants' multiple briefs on this issue. For example, in *Bruner v. United States,* 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1952), discussed in detail *supra,* and in the other cases where the effect of the intervening jurisdictional statutes did not completely eliminate the plaintiff's claim, but rather,

merely altered the court which had jurisdiction over the matter, Plaintiffs were not deprived of their causes of action. Applying § 107 of the Reform Act to the case *sub judice* clearly will deprive Plaintiff Mathews and the other class members of their causes of action under § 1962 of RICO, which were viable at the time this lawsuit was filed. In other words, application of the Reform Act will not merely change the forum in which the Plaintiff and the class members can bring the RICO claims contained in the Proposed Complaint, but will actually deprive them of their day in court altogether. *See Hartford Cas. Ins. Co. v. F.D.I.C.,* 21 F.3d 696, 700 (5th Cir.1994) ("[t]his Court has previously ... [held] that amendments to statutes which affect procedural or remedial rights generally apply to pending cases, where such change does not deprive a party of its '"day in court"'. 'When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate substantive right but rather to "change the tribunal which will hear the case," those changes—barring specifically expressed intent to the contrary—will have immediate effect'.") Thus, it is necessary to proceed to the analysis set forth in *Landgraf* and determine whether or not the Reform Act can properly be applied to the action now before me.

■ Upon consideration of the *Landgraf* analysis, contrary to the Defendants' position that based upon the plain language of § 108 of the Reform Act, the purpose of the Reform Act, the legislative history of the Reform Act and viewing the Reform Act as a whole there is clear Congressional intent that the Reform Act be applied retroactively to pending cases, I conclude first that no clear Congressional intent that § 107 be applied to cases pending when the Reform Act was

tirely upon the act of Congress.' *The Assessors v. Osbornes, [supra.].* 'This rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court.' *Bruner v. United States, [supra.* (citing cases)]. Moreover, we have specifically noted that '[t]his jurisdictional rule does not affect the general principle that a statute is not to be given retroactive effect

unless such construction is required by explicit language or by necessary implication'. *Id.*

9. Contrary to Plaintiff Mathews' position on this issue, in *Tafflin v. Levitt,* 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), the United States Supreme Court expressly described § 1964(c) as providing a "grant of federal jurisdiction." *Id.* at 460, 110 S.Ct. at 795–96.

passed exists.[10] Therefore, it is necessary to proceed to the second prong of the *Landgraf* analysis and determine whether application of the Reform Act to the RICO count would have a "retroactive" effect on the action such that the Reform Act should not govern in the instant matter. As stated above, a new statute has a retroactive effect on a pending case if it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505.

Clearly, applying the Reform Act retroactively to the case *sub judice* will impair rights Plaintiff Mathews and the class members possessed when this law suit was brought in that if applied, the Reform Act will deprive them of their RICO causes of action which were viable at the time this lawsuit was filed. *See also In re Prudential Securities*, 930 F.Supp. at 79 (court held that the Reform Act impaired the plaintiffs' ability to recover for actions which may have violated federal law because it would strip the plaintiffs' complaint of RICO claims after the statute of limitations for securities fraud claims has likely expired and therefore, the statute should not function retroactively without a clear expression of congressional intent which the court did not find). Accordingly, I conclude that the Reform Act is inapplicable to the action at hand to the extent that the Defendants argue that it mandates the complete dismissal of the RICO count in this action. I do, however, recognize that the Defendants' arguments concerning the applicability of § 107 to this action are viable alternatives and therefore, in the event that Defendants decide that an interlocutory appeal of the applicability of the Reform Act to the case at hand is advisable, I will certify such an appeal.

II. *Application of the Reform Act to the Request for Injunctive Relief.*

■ In the "WHEREFORE" clause of Count I of the Proposed Complaint, injunctive relief is requested in the form of "the entry of an order enjoining the Defendants from continuing to act in an unlawful manner in connection with the partnerships ..." The Defendants argue that (1) the Reform Act would bar this request for prospective relief, (2) the application of the Reform Act to the request for prospective relief does not have a retroactive effect under *Landgraf* because the Plaintiff has no vested right in future injunctive relief and (3) therefore, the request for injunctive relief stated in the Proposed Complaint should be disallowed. Defendants' Opposition Brief, p. 24, *citing, Landgraf, supra,* and *Pic–A–State PA, Inc. v. Commonwealth of Pennsylvania,* 42 F.3d 175 (3d Cir.1994). Plaintiff Mathews responds summarily that "Defendants' Brief at 22–24 argues that the Reform Act applies prospectively to Mathews' claim for injunctive relief. Plaintiff does not concede that this argument has merit, but the Court should not now determine at this time the effect of the Reform Act on this claim for ancillary relief in an action that essentially seeks money damages." Plaintiff's Memorandum in Response to Defendants' Brief in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint, p. 16.

In *Landgraf,* the Court stated:

Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. Thus, in *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921), we held that § 20 of the Clayton Act, enacted while the case was pending on appeal, governed the propriety of injunctive relief against labor picketing. In remanding the suit for

10. Specifically, in arguing that § 107 should be applied to defeat Plaintiff Mathews' claim, the Defendants contend that considering the plain language of § 108 of the Reform Act, the purpose of the Reform Act, the legislative history of the Reform Act and viewing the Reform Act as a whole, the clear intent of Congress was to apply the Reform Act to pending cases such as the one *sub judice* because "[i]f Congress had intended to foreclose the retrospective application of the Reform Act in actions arising under RICO, as it did in actions arising under the 1933 and 1934 Acts, it would have said so." Defendants' Opposition Brief, p. 14.

application of the intervening statute, we observed that 'relief by injunction operates *in futuro,*' and that the plaintiff had no 'vested right' in the decree entered by the trial court. 257 U.S. at 201, 42 S.Ct. at 75–76.

*Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1501. The relevant provision of the Clayton Act reviewed in *American Steel Foundries v. Tri–City Central Trades Council, supra.,* altered the standard for evaluating the propriety of injunctive relief against labor picketers.

In *Pic–A–State PA, Inc. v. Commonwealth of Pennsylvania,* 42 F.3d 175 (3d Cir.1994), subsequent to the trial court declaring a Pennsylvania statute unconstitutional as violative of the Commerce Clause and entering an order permanently enjoining its enforcement, a federal statute was passed which made the conduct of a business that sells an interest in another state's lottery a federal crime. The Commonwealth of Pennsylvania then timely appealed the issuance of the permanent injunction and argued that the federal statute should be utilized by the appellate court in assessing the constitutionality of the state statute. The plaintiff disagreed and argued that to apply the federal statute would have a retroactive effect. Upon review, the appellate court held, in relevant part, that it was proper to apply the new statute in assessing the constitutionality of the state statute because, citing to *Landgraf,* to do so would not have a retroactive effect:

> [i]n the matter before us, application of the [federal statute] to the issue presented to this court attaches no new legal consequences to the activity engaged in by [the plaintiff] prior to the enactment of the [federal statute]. In its complaint, [the plaintiff] sought an injunction to bar the prospective enforcement of [the state statute] following its … effective date. As the Supreme Court has noted, "relief by injunction operates *in futuro.* When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive".

*Pic–A–State PA, Inc.,* 42 F.3d at 178 (internal citations omitted).

Contrary to Plaintiff Mathews' assertion that I should wait on the decision of whether the Reform Act is to be applied such that the request for injunctive relief can not be a part of the Proposed Complaint, I see no reason why this issue cannot be decided at this time. Therefore, based upon my review of *Landgraf* and *Pic–A–State PA, Inc.,* I conclude that because the Reform Act affects the propriety of my awarding any prospective relief in this action, application of the new provision to the request for injunctive relief is proper and does not have a retroactive effect. Accordingly, to the extent that the request for injunctive relief in Count I of the Proposed Complaint seeks an order enjoining conduct that would have been actionable as fraud in the purchase or sale of securities, said remedial request contained in the "WHEREFORE" clause of Count I of the Proposed Complaint is no longer a viable request and therefore, Plaintiff Mathews may not amend his Complaint to include in the "WHEREFORE" clause of the RICO count a request for injunctive relief in the form of an order enjoining further conduct by the Defendants that would have been actionable as fraud in the purchase or sale of securities in connection with the partnership funds.

III. *The Propriety of Plaintiff Mathews's Proposed Amendment to Add Additional Plaintiffs and Additional Facts.*

The Defendants also argue that in his Proposed Complaint, Plaintiff Mathews improperly seeks to add new plaintiffs to the case and to assert through them, claims that have already been dismissed, i.e. the claims regarding Funds I and III. In support of this position, the Defendants first state:

> [t]wo facts are beyond contest. First, Mathews originally brought claims with respect to Funds I and III that he had no standing to pursue. As of December 19, 1995, those claims had been dismissed, and this action contained no RICO claim with respect to those two Funds. *See* December 19 Order. Second, Mathews now seeks to add new plaintiffs who would

themselves assert claims with respect to Fund I and III that he lacks standing to pursue.

Defendants' Brief in Opposition to Plaintiff's Motion for Leave to File First Amended Complaint ("Defendants' Opposition Brief"), p. 6. The Defendants then discuss the United States Court of Appeals for the Fifth Circuit decision in *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278 (5th Cir.1981) and state that: "[s]imilarly [to the facts in *Summit Office Park* ], this Court has determined that Mathews has no standing to pursue RICO claims relating to Funds I and III. Accordingly, Mathews has no "identity of interest" with those plaintiffs he now improperly attempts to add by "amending" his Complaint in order to pursue claims relating to those Funds." Defendants' Opposition Brief, p. 7. The Defendants also cite to *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 913 (E.D.Wis.1978); *Schwartz v. The Olympic, Inc.*, 74 F.Supp. 800, 801 (D.Del.1947) and *O'Donnell v. Kusper*, 602 F.Supp. 619, 624 (N.D.Ill.1985) for the proposition that "[o]ther courts have held that a plaintiff who lacks standing to pursue a claim has no right to amend the complaint to bring in other parties who will remain plaintiffs when the complaint is dismissed as to the original plaintiff." Defendants' Opposition Brief, pp. 7–8.

In addressing the Defendants' position on these issues, I first take the opportunity to clarify what effect my Opinion and Order dated December 19, 1995 meant to the posture of the case now before me. The Defendants apparently are of the opinion that by my Order dated December 19, 1995 wherein the Defendants' Motion to Dismiss was granted "as to the issue of Plaintiff's standing to pursue a RICO claim with respect to Funds I and III," this case is now limited to a single plaintiff and his claims relating to Fund II. *See, for example*, Defendants' Opposition Brief, p. 8 ("This Court has previously dismissed all claims with respect to Fund I and III."). To the contrary, as stated in my Opinion dated December 19, 1995, in ruling on the Defendants' Motion to Dismiss, I focused only upon those claims made by Plaintiff Mathews in his individual capacity and not the claims of the class with respect to Fund I, II and III. In other words, by my Opinion and Order dated December 19, 1995, I was clarifying that to the extent the Plaintiff was seeking to recover damages with respect to Funds I and III, he had suffered no such injury and therefore, could not recover any damages related to those funds.

Further, I find that all of the cases cited by the Defendants as dispositive on this issue are factually distinguishable from the case *sub judice*.[11] Specifically, first, Plaintiff

---

11. Specifically, the facts underlying *Summit Office Park* are distinguishable because in *Summit Office Park* the trial court had dismissed the claims of both the named plaintiff and the class it sought to represent, and struck an amended complaint which attempted to: (1) create a new and different class; (2) substitute for the dismissed plaintiff two other plaintiffs as parties plaintiff and as representatives of the new and different class and (3) change the cause of action in the complaint. Notably, upon appeal by the plaintiff, the *Summit Office Park* court held: "we hold only that where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action." *Id.* at 1282. The court further stated: "[s]ince there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint." *Id.*

Likewise, *O'Donnell v. Kusper*, 602 F.Supp. 619 (N.D.Ill.1985), is distinguishable from the case at hand. In *O'Donnell*, a case which was not a class action, the court refused to add/sub-

stitute a new plaintiff who sought to be added/substituted for the original plaintiff whose claims were brought on behalf of the County and not on his own behalf because the new plaintiff also did not have standing to sue on behalf of the County and any claim brought on its own behalf would be a completely new cause of action. *Id.* at 624. The *O'Donnell* court explained the issue before it as being "whether the court should allow a new plaintiff, seeking different relief, to substitute for a plaintiff dismissed for lack of standing" and concluded that Fed.R.Civ.P. 17(a) was "not intended to permit an attorney to locate and substitute a new plaintiff, upon a new claim simply to sustain a pending action." *Id.*, *citing*, Wright & Miller, Federal Practice and Procedure, § 1555 (1984).

The facts in *Turner v. First Wisconsin Mortgage Trust*, 454 F.Supp. 899, 913 (E.D.Wis.1978) are also distinguishable from the instant action as are the facts in *Schwartz v. The Olympic, Inc.*, 74 F.Supp. 800, 801 (D.Del.1947). In *Turner*, the plaintiff had brought a class action for relief arising out of an allegedly fraudulent course of

Mathews is still a plaintiff in this action and has standing to litigate the impropriety of the Defendants' conduct and thus, to assert the RICO claim contained in the Proposed Complaint against the Defendants which alleges a single scheme whereby all three funds were involved; he is merely limited in recovery to the injury he suffered with respect to Fund II, i.e. he does not have standing to recover for all injuries suffered as a result of the Defendants' unlawful conduct. Second, the parties sought to be named as parties plaintiff are and have been members of the class of investors who invested in the three KP/Miller funds since the Complaint was first filed. Third, the Proposed Complaint does not seek to change the causes of action stated in the original complaint. Thus, I find that the proposed amended complaint does not have "the characteristics of a new lawsuit rather than an amended complaint," and therefore, said amendment will not be futile and Plaintiff Mathews can amend his Complaint to add the additional named plaintiffs and to allege additional facts. *Summit Office Park*, 639 F.2d at 1284.

I will also address the Defendants' argument that the proposed Plaintiffs' Fund I, II and III claims are barred by the Reform Act because they are based upon conduct that would have been actionable as fraud in the purchase or sale of securities and were first advanced after the Reform Act was adopted. Defendants' Opposition Brief, pp. 11 and 12 n. 5. As indicated above, the claims of these additional plaintiffs are not new causes of action, but rather, are claims that have been a part of the action since Plaintiff Mathews first instituted this class action on behalf of

both himself and those who invested in the KP/Miller funds and, therefore, this is not a "relation back" factual scenario as the Defendants argue. Simply stated, it would be illogical to hold that Plaintiff Mathews can sue in a representative capacity on behalf of the plaintiffs the Motion to Amend seeks to add and, if he is successful, to hold that these plaintiffs will recover damages from the Defendants, and, at the same time, conclude that these plaintiffs cannot be individually named as parties plaintiff in the action.

Accordingly, because I find that it would not be futile to allow Plaintiff Mathews leave to amend the Class Action Complaint to add these additional parties plaintiff and to add new factual allegations, Plaintiff Mathews' Motion for Leave to File First Amended Complaint is granted with the exception stated above that his amended Complaint shall not contain in the "WHEREFORE" clause of the RICO count, a request for injunctive relief in the form of an order enjoining further conduct by the Defendants that would have been actionable as fraud in the purchase or sale of securities in connection with the partnership funds.

---

conduct engaged in by the defendants, which the plaintiff alleged was violative of a number of the federal securities laws. The *Turner* court found that the plaintiff had no cause of action on the federal claims and on that basis denied her motion for leave to amend the complaint to add as parties plaintiff an individual and a trustee of trust who had causes of action on the federal claims. In so holding, the court opined that "a plaintiff who cannot maintain her own complaint has no right to amend it pursuant to Rule 15 of the Federal Rules of Civil Procedure to bring in other parties who will thereafter remain when the complaint is dismissed as to the original plaintiff." *Id.* at 913.

In *Schwartz*, again not a class action, the plaintiff, an unregistered stockholder, sought to set aside a merger of two corporations. The well-established law in Delaware was that an unregistered stockholder could not attack a merger. On that basis, the court dismissed the plaintiff's claims and denied his motion to amend his complaint to bring in other parties as plaintiffs (presumably individuals who were registered stockholders), holding that "[i]f he cannot maintain his own complaint, he has no right to amend it." *Schwartz*, 74 F.Supp. at 801.